BECK executor, &c. and SEWELL *vs.* McGILLIS and others.

Aliens are incapable of taking by devise, any interest in real property, in this state. But this disability does not extend to personal property.

Neither the marriage of a female with an alien husband, nor her residence in a foreign country, will constitute her an alien, so as to prevent her taking real estate in this state by devise.

A testator, by the first clause of his will, gave to his daughter E. McG., certain real and personal property, *subject to the limitations and powers in trust therein specified*, for her sole and separate use, during her natural life. He then appointed her husband a trustee "to take possession of all and singular the property devised to her, and to receive the rents, issues, interests and profits thereof, and to apply the same to her use, during her natural life, as she should direct." *Held*, that Mrs. McG. took a life estate in the property specified, in her own right, and that no valid trust, or power in trust, was vested in her husband.

And where, by the codicil to the same will, real and personal property were given to Mrs. McG. to be held by her subject to the like restrictions and limitations, and subject to the same powers in trust as specified in the will; *Held*, that Mrs. McG. took an absolute life estate in the property given her by the codicil.

Where, after the execution of a will, the testator sells and conveys a portion of the real estate therein devised, receiving payment of the purchase money for a part thereof, and taking the bond of the purchaser for the price of the residue, secured by a mortgage upon the land, such sale and conveyance amount to a revocation of the devise.

And if such bond and mortgage are owned by the testator at the time of his death, and are not effectually disposed of by his will, their proceeds when collected, are liable to distribution according to law.

After the execution of a will, and during the life of the testator, a mortgage executed by B. and therein specifically devised to E. McG., was foreclosed. Upon the foreclosure sale, the mortgaged premises were purchased by S., who executed a new bond to the testator, for his debt, secured by a new mortgage upon the same premises. *Held*, that by this change in the security, the legacy was adeemed; notwithstanding that after the death of the testator there was found, among his papers, a memorandum in his hand-writing declaring the S. bond and mortgage to be but a renewal of the B. bond and mortgage, and that it was his intention that it should pass to E. McG. under his will.

Distinction between the *ademption* and the *satisfaction* of a legacy.

If a specific legacy does not exist, at the death of the testator, it is adeemed. And this rule prevails without regard to the intention of the testator, or the hardship of the case.

Beck v. McGillis.

Under a bequest of " all moneys" that the testator should die possessed of, the legatee is entitled to the cash, using the term in its popular sense, which the testator, at the time of his death, has in his possession or deposited in bank, and to nothing else.

A bequest of " all bonds and mortgages for sales already made, or which may be hereafter made for lands in the county of W." cannot be construed to embrace contracts for the sale of such lands, where no deeds had been executed.

THE complaint in this cause stated that William Caldwell, late of the city of Albany, departed this life on the 1st day of April, 1848, after having made and published his last will and testament, in writing, in due form of law to pass real and personal estate, bearing date the 29th day of March, 1841, and also a codicil thereto in like form, bearing date the 29th day of December, 1841 ; which will and codicil were in force at the time of the testator's death.    The will contained these . provisions.

" *First.* I give, devise and bequeath to my daughter Eliza, the wife of John McGillis of St. Johns, in the province of Lower Canada, advocate, the following described property, subject to the limitations and powers in trust hereinafter specified : a lot and the buildings thereon, on the south side of State-street, in the —— ward of the said city, bounded north by the said State-street, west by the ground of Isaiah and John Townsend, south by Norton-street, and east by the ground of Christian Miller, subject to a mortgage executed by me to the Albany Insurance Company, for two thousand six hundred and fifty dollars, the amount remaining due to that company for the stock thereof hereinafter mentioned ; also a lot and the buildings thereon, situated on the east side of North Pearl-street, in said city, between State-street and Maiden Lane, bounded west by North Pearl-street, east by James-street, being the same property now in the occupation of Seth Hastings ; also a lot in the —— ward of said city, in what was formerly called " the Colonie," on the west side of Broadway, which lot was formerly occupied as a garden, and under lease to Andrew Kirk ; also my mansion house in the town of Caldwell, Warren county, and state aforesaid, with the grounds attached, about thirty acres, now occupied by my agent, Seth C.

Baldwin ; also I give, devise and bequeath to my said daughter Eliza, a certain bond executed to me by Charles Chapman of the city of Albany, together with the mortgage accompanying the same ; a certain other bond executed by James L'Amoureux of said city, together with the mortgage accompanying the same; a certain other bond executed by William Radley of said city, together with the mortgage accompanying the same; a certain other bond executed by Jesse Buel of said city, together with the mortgage accompanying the same ; also a certain contract executed by Daniel Gifford of the city of Albany, and the moneys due and to grow due thereon ; also a certain contract executed by James Ferguson, and the moneys due and to grow due thereon ; also fifty shares of stock in the Albany Insurance Company, five shares of stock in the Delaware Turnpike Company, together with the interest due on the bonds, contracts and stock aforesaid, and all the rents due at the time of my decease on the above described real estate, and all moneys that I shall die possessed of; also a certain other bond executed by John Baird, together with a mortgage accompanying said bond, on the Lake House property at Lake George, and the interest due upon the same.   To have and to hold all and singular the property both real and personal above described, to my said daughter Eliza, during her natural life, for her sole and separate use, as is hereinafter more particularly provided ; and from and after her decease, I give, devise and bequeath said property to her husband, the said John McGillis, if he shall survive her, for and during his natural life ; and from and after the decease of both my said daughter and her said husband, I give, devise and bequeath the remainder or fee simple in said property to the lawful issue of my said daughter then living, in such relative proportions, (if such issue consist of more than one person,) as they would by the laws of the state of New York have then inherited or taken the same from her, in case she and they were then native born citizens of said state, and she had then died intestate, lawfully seised of said property in fee simple.   To have and to hold the said remainder in said property to the said issue of my said daughter ; if

such issue consist of one person only, to him or her, his or her heirs and assigns forever ; but if such issue consist of several persons, to have and to hold the same to them, their heirs and assigns forever, in the proportions above provided for.

And whereas, in the preceding devise I have given a life estate to my said daughter Eliza, in the property therein devised, and declared my intention to be, that the same shall enure to her sole and separate use during her life, which intention may be defeated unless I appoint a trustee to take charge of said property during the life of my said daughter, and thereby secure its enjoyment to her for her own separate use, free from all claims and liabilities to which it might otherwise be subject ; and whereas, I consider the said John McGillis, the husband of my said daughter, to be a suitable and the most proper person to be appointed a trustee for the purpose aforesaid, I do therefore hereby constitute and appoint him a trustee for ·my said daughter, to take possession of all and singular the property above devised to her, and to receive the rents, issues, interests and profits thereof, and to apply the same to the use of my said daughter, during her natural life, in such manner as she shall direct ; and in case any of the principal of the securities for the payment of money included in the preceding devise, shall be paid to the said trustee during the life of my said daughter, or if he survives her, during his life, he shall reinvest the same in as safe and secure a manner as the same was invested, prior to such payment, and the same shall after such reinvestment be held subject to the same trusts as before.

*Second.* I give and bequeath to my said son-in-law, John McGillis, my wardrobe or wearing apparel ; also all articles intended for my personal use contained in my inner office at Caldwell, on Lake George, together with my skiff or small boat called the Emerald, used on said lake, with its appendages, to have and to hold the same to the said John McGillis, as his absolute property.

*Third.* I give and bequeath to William Hugh Caldwell, son of my said daughter Eliza, my gold snuff box and gold watch, and my silver shaving box.

*Fourth.* I give and bequeath to T. Romeyn Beck, my fur coat and gold headed cane.

*Fifth.* I give, devise and bequeath to Helen Louisa Beck, daughter of T. Romeyn Beck, the following described property : a lot and the buildings thereon, situated on the east side of Market-street, in the city of Albany, between Hamilton-street and the old watering place, as now in the occupation of William Radley and Jacob Newburgh, together with the right of dockage and wharfage attached to said lot, and all rents due for said property remaining unpaid at my decease ; also the rent and reversion of a certain farm, being number one hundred and fifty-two (152), in Kingsborough patent, Fulton county, and state aforesaid, containing about one hundred acres, originally leased by James Caldwell to John Grant, in perpetuity, at eight dollars per annum ; also the rent and reversion of another farm, number two hundred and fourteen (214), in the patent and county aforesaid, containing about two hundred and sixty-seven acres, originally leased to John Ryan, in perpetuity, at forty-three dollars and twenty-five cents per annum ; also the rent and reversion of another farm, number one hundred and seventy-two (172), in the patent and county aforesaid, containing about one hundred acres, originally leased to said Ryan, in perpetuity, at fifteen dollars and seventy-five cents per annum ; also the rent and reversion of another farm, numbered two hundred and forty-one (241), in said patent and county, containing about one hundred and fifty-five acres, originally leased to said Ryan, in perpetuity, at twenty-five dollars and seventy-five cents per annum ; also pews numbered one hundred and thirty-three (133) and one hundred and thirty-four (134), in the First Presbyterian Church in the city of Albany, the former being a free pew, and the latter subject to a rent of thirty dollars per year ; to have and to hold the same to the said Helen Louisa Beck, her heirs and assigns forever.

*Sixth.* I give, devise and bequeath to Catharine Elizabeth, daughter of T. Romeyn Beck, and wife of Pierre Van Cortlandt, the following described property : a lot and the buildings thereon, situate, lying and being on the east side of Market-

street, in said city of Albany, between Hamilton-street and the old watering place, as occupied by Samuel W. Larcher and Patrick Toole, together with the right of dockage and wharfage attached to said lot; and also the rent and reversion of a certain lease to the said Patrick Toole, for a part of said lot, and all rents on said property remaining unpaid at the time of my decease; also the rent and reversion of a certain farm, situate, lying and being in the town of Hartford, Washington county, and state aforesaid, originally leased to John Simpson, in perpetuity, and now in the possession of Stephen Murrell, at an annual rent of eighty dollars; also pew numbered ninety-five (95), in St. Peter's Church in the city of Albany; to have and to hold the same to the said Catharine Elizabeth, her heirs or assigns forever.

*Seventh.* And I do hereby nominate and appoint my said daughter, Eliza McGillis, executrix, and my son-in-law, John McGillis, above named, Theodric Romeyn Beck, of the city of Albany, and Pierre Van Cortlandt, Jr. of the county of Westchester, and state aforesaid, executors of this my last will and testament."

The codicil was as follows:

" I give, devise and bequeath to my daughter Eliza, the wife of John McGillis, named in my aforesaid will, an island situated in Lake George, in the town of Bolton, in the county of Warren, known as Green Island. I also give, devise and bequeath to my said daughter Eliza, all bonds and mortgages for sales already made, or which may be hereafter made by me for lands in the county of Warren.

All the rest, residue and remainder of my real estate, situate in the town of Caldwell, remaining unsold at the time of my decease, and all the back rents due upon lots by me leased in said town of Caldwell, and in Kennedy's patent, I give, devise and bequeath to my daughter Eliza, the wife of John McGillis, to Catharine Elizabeth, the wife of Pierre Van Cortlandt, and to Helen Louisa Beck, the daughter of Theodric Romeyn Beck, share and share alike between them.

All the gifts, devises and bequests by this codicil made or given

to my said daughter Eliza, the wife of John McGillis, to be held by her subject to the like restrictions and limitations, and subject to the same powers in trust, as specified in my last will and testament, to which this is a codicil."

The complaint alledged that the due execution of the said will and codicil were proved before the surrogate of the county of Albany, on the twenty-second day of May, in the year 1848, as a will both of real and personal estate, and letters testamentary thereon were granted to the plaintiff, Theodric Romeyn Beck, solely, the other executors therein named having duly renounced or refused to take upon themselves the execution thereof, and that he thereupon duly qualified as such executor, and assumed the execution of the said will. That the said will and codicil were also duly proved before the surrogate of the county of Warren, on or about the seventeenth day of August, in the year 1848, as a will of both real and personal estate, and duly recorded in the office of the said surrogate accordingly. That the said William Caldwell was never married, and died without lawful issue, leaving the following named persons his only lawful heirs at law and next of kin, surviving him, to wit: The following persons, children of his sister, Jane Sewell, wife of Stephen Sewell of Montreal aforesaid, deceased—the said Jane Sewell having departed this life on or about the 19th day of October, 1847—namely: Charlotte, wife of John Durnford of Toronto, in the province of Canada West; Mary, wife of Charles Jones of the same place; Augusta, wife of Philip Durnford of Montreal, in the province of Canada East; Jane Ann Jamieson, widow of John Jamieson, residing in Edinburgh, Scotland; the plaintiff, Edward Quincy Sewell, of Sorel in the said province of Canada East, and Stephen Charles Sewell, of Montreal aforesaid; and that all the said persons are, and were at the time of the death of the said William Caldwell, aliens and subjects of the crown of Great Britain and Ireland, and resident in the dominions of the said crown. Also the following persons: Catharine Elizabeth Beck, now the wife of Pierre Van Cortlandt of the county of Westchester, in the state of New-York, and Helen Louisa Beck of the city of Albany; the

said Catharine Elizabeth and Helen Louisa being the only children of the plaintiff, Theodric Romeyn Beck and his late wife Harriet, now deceased, who was a sister of the said William Caldwell deceased. And also James Caldwell Low, the only child of Ann Maria Low deceased, who was the wife of James Low, late of the city of Albany, deceased, and a sister of the said William Caldwell, deceased. That the said James C. Low, when last heard from by the plaintiffs, was a soldier in the army of the United States, serving in Lower California, in the regiment commanded by Col. Stevenson. That Eliza, the wife of John McGillis, one of the devisees and legatees of the said William Caldwell, was born in the city of Albany, on or about the 24th day of September, in the year 1820 ; and on or about the 17th day of May, in the year 1836, being resident at Montreal, in the then province of Lower Canada, now Canada East, intermarried with the said John McGillis, who then was and has ever since remained and now is an alien from the government of the United States, and a subject of the queen of the United Kingdom of Great Britain and Ireland. That the said John McGillis and Eliza his wife, have issue of their said marriage now living, and all born in the said province of Lower Canada or Canada East, all of whom were at the time of the death of the said William Caldwell, and still are aliens as aforesaid, and are all infants, under the age of fourteen years, to wit: Mary Charlotte McGillis, William Hugh Caldwell McGillis, John McGillis, Elizabeth McGillis, and Reginald McGillis.

The complaint further stated that an act was passed by the legislature of the state of New-York on the sixth day of March, 1830, entitled " an act for the relief of Charlotte Sewell and others," which act is in the words following : " § 1. Charlotte Sewell, Augusta Sewell, Mary Sewell, Edward Quincy Sewell, Stephen Charles Sewell, and Jane Ann Sewell, now residing in the city of Montreal, in Lower Canada, grandchildren of James Caldwell, late of the city of Albany, deceased, shall be, and they are hereby entitled to take and hold any real estate in this state, to them devised by the said James Caldwell, and

Beck *v.* McGillis.

any real estate that may hereafter be devised to them by any child or grandchild of the said James Caldwell, or descend or come to them from any such child or grandchild of the said James Caldwell, in like manner, to the same extent, and with the like effect, as they would have taken or might or could take the same, if they had been or were native citizens of this state ; and that the estate and interest the people of this state have, could or might have, to the said real estate so devised to the said Charlotte Sewell, Augusta Sewell, Mary Sewell, Edward Quincy Sewell, Stephen Charles Sewell, and Jane Ann Sewell, by the said James Caldwell, is hereby released to and vested in them, the said Charlotte Sewell, Augusta Sewell, Mary Sewell, Edward Quincy Sewell, Stephen Charles Sewell, and Jane Ann Sewell, respectively in the manner, to the extent, and with the effect aforesaid."

The complaint then alledged that various questions had arisen as to the true intent and meaning of different parts of the said will and codicil, and the legal effect of various provisions therein contained in connection with certain acts of the testator after the making of the said will, which it was important should be judicially determined, and which all parties interested were desirous should be determined by the judgment of this court without delay. That some of the said questions on which it is so deemed important to obtain the decision and judgment of this court, and the facts relating to them respectively, were as follows :

" *Firstly*—The said plaintiffs state that they are informed and believe that the lot devised by the testator to the said Eliza McGillis subject to the limitations and provisions specified in his said will and therein described *as a lot in the city of Albany* "in what was formerly called the Colonie, on the west side of Broadway, which lot was formerly occupied as a garden, and under lease to Andrew Kirk," was sold by the testator after making his said will and conveyed by deed bearing date on or about the seventh day of February, in the year 1848, to the said Andrew Kirk, and that the testator took back from the said Andrew Kirk his bond for the entire purchase money, being

Beck *v.* McGillis.

three thousand dollars with interest thereon, together with a mortgage on the said premises to secure the payment of the purchase money, which bond and mortgage the testator held at the time of his death, and on which the sum of three thousand dollars then remained unpaid for principal, with interest from the day of the date thereof. And these plaintiffs further state that a question has been raised on the claim of the devisees of the said lot, which they are advised is doubtful, whether the interest of the said William Caldwell in the said lot by virtue of the said mortgage, at the time of his death, did not pass to the devisees thereof, under the terms of his will? and also, if the interest of the said William Caldwell as such mortgagee did not pass by the said devise, whether the said bond and mortgage of the said Andrew Kirk did or did not pass under the devise in the said will to his daughter Eliza, of all moneys that he should die possessed of, or whether the same are undisposed of by the said will?

*Secondly*—The said plaintiffs state that they are informed and believe that the testator having given by his will to his said daughter as therein mentioned, a certain bond executed by Jesse Buel, of the said city of Albany, together with the mortgage accompanying the same, subsequently to the making of the said will, foreclosed the said mortgage under the statute, and the mortgaged premises were sold on or about the fourth day of January, 1847, and purchased by William Smith of the said city, who gave his bond to the said testator for the purchase money of two thousand five hundred dollars, bearing date the said fourth day of January, 1847, together with a mortgage on the said premises of the same date to secure the payment of the said bond, which bond and mortgage the testator held at the time of his death, and on which the sum of two thousand five hundred dollars was then unpaid for principal with interest from the fourth day of January, 1848.

That among the papers of the said testator in his possession at the time of his death, one was found in his own hand-writing, bearing date the fourth day of January, 1847, in the words following :

"On the fourth of January, 1847, was foreclosed the mort- gage of Jesse Buel and bought by his brother-in-law William Smith, whose bond and mortgage on the same premises I took for 2500 dollars, payable in three years; this is only a renewal of Jesse Buel's mortgage, a continuation, and by my will is to go to my daughter Eliza McGillis.

Albany, 4th January, 1847.

(Signed)                    WM. CALDWELL."

And a question arises upon a claim on behalf of the said Eliza McGillis, whether under the circumstances herein stated the said bond and mortgage so given by the said Wm. Smith passed to the devisees under the devise in the said will of the bond and mortgage of Jesse Buel? and also whether the same passed under the devise to the said Eliza, of all the moneys that the said Wm. Caldwell should die possessed of, or whether the same are undisposed of by the said will?

*Thirdly*—These plaintiffs state that they have been informed and believe that the testator having by the fifth clause of his will devised to his niece, the said Helen Louisa Beck, "a lot and the buildings thereon, situated on the east side of Market- street, in the city of Albany," as therein particularly mentioned, and by the sixth clause of his said will having devised to his niece Catharine Elizabeth, daughter of T. Romeyn Beck, and wife of Pierre Van Cortlandt, another "lot and the buildings thereon, situate, lying and being on the east side of Market- street, in said city of Albany," the buildings on both of the said lots in the month of February, 1848, were destroyed by fire, each of them being at the time insured by the Albany In- surance Company for the sum of nine hundred dollars, that the amount of the insurance was not payable until sixty days after proof of the loss, and had not become due at the time of the testator's death—that shortly before his death and on the 31st day of March, 1848, the said testator by deed conveyed the lot so devised to Helen Louisa Beck to the said Catharine Eliza- beth Van Cortlandt, and by another deed of the same date conveyed the lot so devised to the said Catharine Elizabeth Van Cortlandt to the said Helen Louisa Beck; the execution

of which deeds was duly acknowledged by the said testator, and the same are now ready to be produced as this court shall direct. And a question arises upon the claims of the said Eliza McGillis on one part, and the said Helen Louisa Beck and the said Catharine Elizabeth Van Cortlandt respectively, on the other part, whether the said money so due from the said insurance company for the destruction of the buildings on the said lots, respectively belong to the said Helen Louisa and Catharine Elizabeth, by virtue of the aforesaid conveyances to them of the lots upon which the said buildings were erected, or whether the same passed under the aforesaid devise of all the moneys that the said testator should die possessed of; and a further question is hereby submitted by the said plaintiffs whether the said insurance moneys are disposed of in any manner by the said will, and whether they are not to be distributed to the next of kin of the said Wm. Caldwell.

*Fourthly*—And these plaintiffs further state that they are informed and believe that at the time of the death of the said William Caldwell, one Patrick Toole was indebted to him in the sum of sixty-two dollars fifty cents, for rent of part of the premises so conveyed to the said Catharine Elizabeth Van Cortlandt and Helen Louisa Beck, which amount has since been paid by said Toole to the plaintiff, Theodric Romeyn Beck, as executor as aforesaid. And a question arises upon the claim of the said John McGillis and Eliza his wife, whether the said sum of sixty-two dollars and fifty cents has not also passed under the said general bequest "of all moneys" that the testator should die possessed of, or whether the said sum was not disposed of by the said will of the testator and is to be distributed according to law.

*Fifthly*—By the first clause of the codicil to the will the testator gave, devised and bequeathed to his said daughter Eliza McGillis all bonds and mortgages for sales then already made, or which might thereafter be made by him for lands in the county of Warren—and these plaintiffs state that they are informed and believe that the testator before his death, and both before and after making his said will had agreed by con-

tract to sell sundry parcels of land in said county, but deeds had not been executed in fulfilment of such contracts, or any securities taken by the testator for the consideration money—and these plaintiffs are advised that a doubt exists whether these contracts pass under the said clause in the codicil above referred to, or whether the land contracted to be sold passes to the devisees or heirs at law, subject to the execution of the contracts, and the moneys due on the said contracts belong to the said executor to be distributed to the next of kin.

*Sixthly*—The said John McGillis and all his children and those of his said wife being aliens to the government of the United States as before stated, these plaintiffs are advised that a question arises whether the devise to the said John McGillis if he survive his said wife of a life estate in the real estate devised to his said wife, as mentioned in the first section of the said will and in the codicil thereto, and the devise of the remainder in said property to the lawful issue of the said Eliza McGillis, living at the time of her death as mentioned in the said will and codicil are void, and whether the fee simple in all the said property and estate has vested in the heirs at law of the said testator, subject to a life estate therein of the said Eliza McGillis only.

*Seventhly*—These plaintiffs are advised that a question arises upon the terms of the said will, whether any trust whatever is legally created by the directions therein contained in relation to a trustee to take charge of the property therein devised to the said Eliza McGillis, and whether if there be such a trust, the said John McGillis, the husband of the said Eliza, is by law incapable of executing the same by reason of his being an alien and resident out of the jurisdiction of this court, and if there be a legal trust and the said John McGillis is incapable of executing the same, whether this court has power to appoint a trustee in his place, and if there be no legal trust, whether it is the duty of the executor under the said will to take charge of and invest the personal property devised to the said Eliza during her life, and pay over the income thereof to her or apply the same to her use.

And these plaintiffs further state that they believe it to be important to the due and speedy administration of the estate and effects of the said William Caldwell, deceased, by the said plaintiff, Theodric Romeyn Beck, as executor as aforesaid, and to the devisees and legatees named in his said will and codicil and to his heirs at law and next of kin, that the several matters aforesaid in regard to the said estate as to which doubts exist or questions have arisen, and all other matters in regard thereto in reference to which any questions or doubts as to the rights of any party in interest may exist should be judicially determined by this court at this time, and such direction, decree and judgment be thereupon made and given as may finally settle and determine the rights of all parties in interest in and to the estate and property of which the said William Caldwell died seised or possessed, and in and to every part thereof. And for that purpose the said Edward Q. Sewell, one of the said testator's nephews, and one of his said heirs at law and next of kin, is a party plaintiff hereto, and as well as the said Theodric Romeyn Beck as executor as aforesaid, presents to this court the several matters and questions aforesaid, and asks the relief hereinafter prayed for."

The prayer of the complaint was that this court would by its decree, determination or judgment, give all necessary and proper directions for the due administration of the estate of the said William Caldwell, deceased, in regard to the several particulars hereinbefore referred to, and in regard to any other questions which might be raised by any of the parties, and for the passing and settling the accounts of the said estate from time to time, and if it be necessary and proper, that the court would appoint a trustee to take charge of the real and personal estate, or either, devised and bequeathed to the said Eliza McGillis, during her natural life, with all proper directions as to the execution of his trust, and would also adjudge and determine whether the devise of a life estate in the said property to the said John McGillis in case he should survive his said wife, and the remainder to the children of the said Eliza McGillis, was or was not void, and if void whether the estate

in remainder in the said real estate had vested in the heirs at law of the said testator, subject only to the life estate of the said Eliza McGillis therein, and for general relief.

*J. V. L. Pruyn,* for the plaintiffs.

*J. C. Spencer,* for the defendants John McGillis and wife.

*J. Rhoades,* for infant children of McGillis and wife.

*S. Stevens,* for James C. Low.

*W. Parmelee,* for the other heirs at law of the testator.

HARRIS, J.   In the examination of the questions which this case presents, I propose *first*, to determine the capacity of the defendants McGillis and wife, and their children, the principal objects of the testator's bounty, to take under the will, and *then* to examine the provisions of the will, and ascertain its legal effect, in reference to such capacity.

1.  As to the capacity of McGillis and wife and their children to take under the will.   Mrs. McGillis was born a citizen of the United States.   While yet a minor she intermarried with a subject of Great Britain, but neither her marriage nor her residence in a foreign country constitutes her an alien.   Whether, indeed, a citizen can, by any mere act of his own, dissolve his native allegiance and become an alien, is not definitively settled in this country.   The question has been regarded as one of much difficulty as well as delicacy, and, though frequently discussed before the supreme court of the United States, it has never, I believe, been regarded as the leading point in the case presented, so as to call for the judgment of the court.   But it has been decided by that court, that the marriage of a feme sole with an alien husband, does not produce a dissolution of her native allegiance. (*Shanks* v. *Dupont,* 3 *Peters,* 242.) The converse of this proposition has been held in this state, where an alien widow claimed to be endowed of the lands of

her deceased husband, who was a citizen. (*Kelly* v. *Harrison,* 2 *John. Cas.* 29. *Mick* v. *Mick,* 10 *Wend.* 379.) There is, therefore, no obstacle in the way of Mrs. McGillis taking as a devisee under the will.

But in respect to the husband, and the children of the marriage, it is otherwise. They were at the time of the testator's death, aliens, and, of course, incapable of taking by devise, any interest in real property. (2 *R. S.* 57, § 4.) The statute declares, that the interest so devised shall descend to the heirs at law of the testator. But this disability does not extend to personal property. There is nothing to prevent these parties from taking the benefit of the provisions of the will in their behalf, as legatees.

2. We are next to examine the provisions of the will itself, with a view to determine their legal effect. And here the first question relates to the character of the devise to Mrs. McGillis. *Subject to the "limitations and powers in trust therein expressed,"* the testator gives to her certain real and personal property specified in the first clause of the will, for her sole and separate use, during her natural life; and then, apprehensive that his declared purpose of giving his daughter such life estate might otherwise be defeated, he appointed her husband a trustee " to take possession of all and singular the property devised to her, and to receive the rents, issues, interests and profits thereof, and to apply the same to her use, during her natural life, as she should direct." What is the effect of this provision? Does it vest the legal estate, during the life of Mrs. McGillis, in her, or in her husband in trust for her? If in her, is the authority to receive the rents, &c. valid, as a power in trust merely? There are no words in the will indicating an intention, or which can have the effect, of creating a trust estate. On the contrary, the obvious purpose of the testator was, to vest the title in his daughter, and, so far as consistent with her situation as a *feme covert,* to subject the property to her control. Hence the unequivocal terms employed: " I give, devise and bequeath to my daughter Eliza," "To have and to hold all and singular the property both real and personal above described to my said

daughter Eliza :" "Whereas in the preceding devise I have given a life estate to my said daughter Eliza." On the other hand, there are no words indicating an intention to vest any title in the husband. His object, on appointing a trustee, the testator declares to be, that he may "thereby secure to his daughter the enjoyment of the property, free from all claims and liabilities to which it might otherwise be subject." For this reason, he proposes to appoint a trustee, not to take the legal title, but "to take charge of the property ;" "to receive the rents, &c. and to apply the same as his daughter should direct.

Nor do I think a valid *power in trust* was created. The legal title being by the devise vested in Mrs. McGillis for life, it carried with it, as a necessary incident, the right to collect the rents and profits. If it were not so, the wife would hold the legal title in trust for her husband to collect the rents as trustee for her. This would be absurd. Indeed, I understand it to be an invariable rule, that a seisin of the legal estate, and the legal right to receive the rents and profits, are inseparable. A devise of the legal estate carries with it, by necessary implication, the right to the rents and profits. ( *Wood* v *Wood,* 5 *Paige,* 596. *Knight* v. *Wetherwax,* 7 *Id.* 182 ) On the other hand, a devise of the rents and profits of land is a devise of the land itself. (4 *Kent,* 536.) My conclusion, therefore is, that Mrs. McGillis, under the first clause of the will, took a life estate in the property specified, in her own right, and that no valid trust, or power in trust, was vested in the husband.

I think it very clear, too, that Mrs. McGillis took an absolute life estate in the property given her by the codicil. She was to hold the gifts, devises and bequests made, or given to her by the codicil, subject to the same restrictions, limitations and powers in trust, specified in the will. It was, obviously, the intention of the testator to connect these latter devises and bequests with those already made, and to bring them within the provisions of the first clause of the will. But for their alienage, the husband and children would have taken the same

Beck v. McGillis.

estate in the real property devised to Mrs. McGillis by the codicil, as they would have taken had it been included in the first clause of the will. And as their alienage does not affect their right to take personal property, they do take under the codicil the same interest in the personal property there bequeathed to Mrs. McGillis for life, as they take under the provisions of the first clause of the will, in the personal property there bequeathed.

Two other questions of considerable difficulty have been raised in relation to specific portions of the testator's estate. Each of these questions, though they are kindred in their character, will require a distinct examination:

1. The property described in the will as a lot in what was formerly called "the Colonie," on the west side of Broadway, &c. and which by the will is devised to Mrs. McGillis, was, after the execution of the will by the testator, sold by him. For a portion of the lot he had received payment, and, for the price of the residue, he had taken the bond of Mr. Kirk, the purchaser, for $3,000, secured by a mortgage upon the lot, which bond and mortgage was a part of the testator's estate at the time of his death. The question is, whether the sale of the lot was a revocation of the devise, or whether the bond and mortgage taken for the purchase money, took the place of the lot? Upon this question it might be enough for me to say, that it has been settled by a decision in the late court of chancery, where this precise question was the only point in judgment, and where it was carefully and ably considered. (*See Adams v. Winne,* 7 *Paige,* 97.) In that case the bill was filed by two daughters of the testator, who, by his will, had devised to them certain real estate. After the execution of the will, the testator had sold one of the lots so devised, and received from the purchaser his bond and mortgage for the purchase money. The daughters claimed the bond and mortgage under the devise of the lot. They insisted, as it is insisted here, that by taking a mortgage upon the same lot for the purchase money, simultaneously with the execution of the deed, the testator's interest was not wholly divested, and therefore, the de-

vise was not revoked. (2 *R. S.* 65, § 47.) The chancellor held that the sale of the lot, and taking for the purchase money a bond and mortgage, was such a destruction of the specific property devised as to amount to a revocation of the devise.

But I have been invited by the ingenious and well constructed argument of the counsel for the defendants McGillis and wife, to examine the question as though it was open for adjudication. Such examination has led me to the same conclusion at which the chancellor arrived in *Adams* v. *Winne.*

Previous to the adoption of the revised statutes, the law, in its strictness, required that the interest which the testator had in the subject of the devise when he made his will, should remain unchanged until his death. Any, the least alteration of such interest, wrought a revocation of the devise. ( *Walton* v. *Walton, 7 John. Ch.* 271.) The effect of this rule was in many instances, to defeat the intention of the testator. To obviate this result, and " prevent a constructive repeal of the statute of wills," the legislature upon the recommendation of the revisers, changed the rule as it had previously existed, in three special cases. It was declared by the 45th section of the act relating to wills, (2 *R. S.* 64,) that an agreement to sell lands devised by a will previously executed, should not be deemed to be a revocation of such previous devise. By the next section, it was declared that a charge or incumbrance upon such land, created for the purpose of securing the payment of moneys, or the performance of a covenant, should not work such revocation : and by the 47th section it was declared in substance, that no devise should be deemed to be revoked by any subsequent act of the testator which should have the effect to alter, but *not wholly to divest,* his estate or interest. It is under this last provision of the statute, that the learned counsel insists that the devise should be supported. This of course depends upon the question, whether by the transaction with Kirk, the estate or interest of the testator was wholly divested ? Regarding this as an open question, it is by no means free of embarrassment. The testator can not, in an unqualified sense of the term, be said to have parted with all his in-

terest in the lot. There is great force and plausibility in the argument, that the transaction amounted to nothing more than a conditional sale. It is a familiar rule that when two instruments are executed, being parts of the same contract, they constitute but one act, and are to be construed and take effect together. It is upon this principle that it has been decided that where a deed and a mortgage for the purchase money are executed simultaneously, the wife of the purchaser is not entitled to dower as against a party claiming under the mortgage. (*Stow* v. *Tifft*, 15 *John.* 458. *Holbrook* v. *Finney*, 4 *Mass.* 566.) But even in the case of dower, were the question *res integra*, I should have considerable difficulty, independent of the equitable doctrine which gives to the vendor a lien for the purchase money without any mortgage, in maintaining the soundness of the positions established by the decisions. The true nature of the transaction, and the intent of the parties is, that the vendor shall divest himself of all his title in the premises sold, and that it shall be vested in the purchaser. On his part he becomes the debtor of the vendor. The one has changed his real property into a debt. The other has become invested with all the rights which the vendor had, as owner of the property. As owner, he may maintain trespass, and defend his possession, even as against the mortgagee. His interest, and not that of the mortgagee, is liable to execution. He alone can convey a title; and his conveyance alone, will vest an absolute title in his grantee, subject only to be defeated by enforcing the lien of the mortgage; all the interest which the vendor has, is the payment of his debt. In England, the mortgagee is considered as having the legal title, and even here, until the adoption of the revised statutes, the mortgagee might treat the mortgagor as his tenant, and maintain ejectment for the recovery of the premises. "But since the action of ejectment by the mortgagee is abolished, a court of law," says Chancellor Kent, (4 *Kent*, 157,) "would seem to have no jurisdiction of the mortgagee's interest. He is not entitled to the possession, nor to the rents and profits. He is turned over entirely to the courts of equity." The mortgage is no longer con-

sidered as conveying a title. All the mortgagee can do is, after forfeiture, to invest himself with the legal title, by a foreclosure and sale. (*Jackson* v. *Myers*, 11 *Wend.* 533.) In *Phyfe* v. *Riley*, (15 *Id.* 248,) Savage, Ch. J. said, "in courts of law, in this state particularly, the mortgagor is considered the true owner against all the world except the mortgagee: and even the mortgagee has been considered merely an incumbrancer, until forfeiture of the condition by non-payment of the money. Then and not till then he is considered as having an interest in the land." In *Jackson* v. *Willard*, (4 *John.* 41,) where the doctrine was first settled in this state, that the mortgagee has no interest which is the subject of a sale upon execution, Kent, Ch. J. says, until foreclosure, or at least until possession taken, the mortgage remains in the light of *a chose in action.* It is but an incident attached to the debt. In *Jackson* v. *Bronson*, (19 *John.* 325,) the court said: " It is now well settled that the mortgagee has a mere *chattel interest.* The mortgagor is considered as the proprietor of the freehold. The mortgage is deemed a mere incident to the bond or personal security for the debt: and the assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered in law as a nullity."

If this be so; if when the testator executed his deed to Kirk, and took back his bond for the purchase money, secured by a mortgage upon the premises, he retained "*no interest in the land:*" if his mortgage was to be regarded " in the light of a *chose in action*," as but " an incident attached to his debt;" how can it be said that he was not " wholly divested" of his estate and interest in the property? The reform in the law relating to implied revocations was, undoubtedly, much needed. Had the revisers applied to it a still bolder hand, I am inclined to think they would have rendered a still more valuable service. In the case before us, there is very little reason to suppose, that it was the design of the testator, when he converted the lot he had devised to Mrs. McGillis, into a bond and mortgage, that the security should take a different direction. But it is the office of a judge to declare the law, strictly and truly as he finds

Beck *v.* McGillis.

it to be, and not to amend or improve it.   It is not denied that, but for the provisions of the statute already noticed, the transaction would have amounted to a clear revocation of the devise.   The effect of the sale to Kirk, as I understand it, was, not merely to alter but wholly to divest the testator's estate and interest in the subject of the devise.   With this view of the law, I am bound to declare, though it may, as there is reason to fear it will, defeat the testator's purpose, that the conveyance of the lot in the Colonie to Kirk after the will was executed, was a revocation of the devise of that lot by the will, and that the bond and mortgage not having been effectually disposed of by the will, their proceeds, when collected, will be liable to distribution according to law.

2. After the execution of the will the bond and mortgage against Jesse Buel was foreclosed.   Upon the foreclosure sale, the premises were purchased by William Smith, who executed a new bond to the testator for his debt, secured by a new mortgage upon the same premises.   Upon the death of the testator, there was found among his papers, a memorandum, in his own handwriting, declaring the Smith bond and mortgage to be but a renewal of the Buel bond and mortgage, and that it was his intention that it should pass to Mrs. McGillis under his will.   Has this change in the security extinguished the legacy? or if it otherwise would, can the memorandum of the testator, clearly showing that it was the intention of the testator that it should not have this effect, save the legacy?   These questions I proceed to consider :

Some confusion has arisen on this subject, from the failure even of elementary writers, to keep in view the distinction which I suppose exists between what is, strictly, the ademption of a legacy and its satisfaction.   *Ademption*, as I understand the term, is only predicable of a specific legacy.   It takes place, as the term imports, when the thing which is the subject of the legacy, is *taken away*, so that when the testator dies, though the will purports to bestow the legacy, the thing given is not to be found to answer the bequest.   It has been extinguished, if a specific debt, by having been paid to the testator himself; if an

article of property, by its sale or conversion. This is ademp-
tion—whether or not it has taken place is a conclusion of law,
and does not depend upon the intention of the testator.
Whether or not a particular legacy is a specific or a general pe-
cuniary legacy, is, indeed, very much a question of intention.
It is not always easy to determine whether a testator intended
to give, to the object of his bounty, a specific thing, as some
specified debt then due to him, or a general legacy to be paid
out of such specified debt. In the one case, the collection of
the debt by the testator would be an ademption of the legacy.
In the other, the legacy would be a charge upon his estate gen-
erally. Upon this subject, Chancellor Kent remarks that " the
courts are so desirous of construing the bequest to be general,
that if there be the least opening to imagine that the testator
meant to give a sum of money, and referred to a particular
fund only as that out of which he meant it to be paid, it shall
be construed to be a pecuniary legacy, so that it may not be
defeated by the destruction of the security." ( *Walton* v. *Walton,*
*above cited.*) When this question is settled, and it is determined
that it was the intention of the testator to give a specific thing,
and not a general legacy, then the intention of the testator has
nothing further to do with the question of ademption. This is
entirely a rule of law, and the rule is, that the legacy is extin-
guished, if the thing given is gone.

Satisfaction, on the other hand, is predicable, as well of a
general, as a specific legacy. It takes place when the testator,
in his lifetime, becomes his own executor, and gives to his leg-
atee what he had intended to give by his will. Thus it may
happen, in respect to a *specific* legacy, that it has been both
*adeemed* and *satisfied ;* adeemed, because the thing is gone
when the testator dies; *satisfied,* because the legatee has re-
ceived it. And this, unlike that of ademption, is purely a ques-
tion of intention. Upon this question, with a view to ascertain
whether, in fact the testator, in making an advance to his leg-
atee, intended it as a satisfaction, either *in toto* or *pro tanto,*
extrinsic evidence is admissible. It is to this class of cases
that Mr. Mathews refers, when he says " extrinsic evidence is

not only admissible to repel a presumptive ademption, but is also allowed to fortify the presumption when impeached." (*Mathews' Pres. Ev.* 140.) It is observable that this writer has here failed to make the distinction which I have supposed to exist between the ademption and the satisfaction of a legacy, using the term ademption when satisfaction was evidently intended. (*See Story's Eq.* §§ 1100, 1102, 1111, 1112, 1114. *Preston on Leg. tit. Parol Evidence, Ademption, Satisfaction. Ward on Leg.* 261 *to* 268, *tit. Implied Revocations.*) I am indebted to Mr. Preston's admirable treatise for the distinction I have made between the terms ademption and satisfaction. I adopt it, because it tends to perspicuity. It is necessary to say, however, that this distinction has not been observed by other standard writers. Both Roper and Ward employ the term *ademption* as applicable to both classes of legacies. They treat of the ademption of both pecuniary and specific legacies. Judge Story also seems to prefer the latter classification. (§ 1111.) But whichever is adopted, the same thing is intended ; and the rules of evidence which I have stated to be applicable to the ademption and satisfaction of legacies, are equally applicable to the ademption of specific and pecuniary legacies.

With these definitions and distinctions before us, the determination of the particular questions in hand is not difficult. If there was any doubt whether in giving to Mrs. McGillis the Buel bond and mortgage, a specific or pecuniary legacy was intended, extrinsic evidence might have been received to ascertain the character of the legacy. But here there is no question —it is plainly a *specific* legacy. The bequest is of that peculiar debt, and not of a sum of money to be paid out of that debt. Had the testator received payments upon the bond and mortgage, such payments would have constituted an ademption *pro tanto*. The balance, if he had still retained the bond and mortgage, when he died, would have passed to the legatee. But the debt bequeathed was, in fact, fully paid to the testator. The bond and mortgage were satisfied by the foreclosure sale. The thing bequeathed was gone, and the legacy was adeemed. The fact that the same money which satisfied Buel's debt has

been invested in a new security upon the same property, cannot operate to save the legacy. Whether the testator was paid in money or a new security, or whether such payment was invested in another bond and mortgage, upon the same or other premises, cannot affect the right of the parties. In either case, the thing described in the will, and for which the legacy calls, no longer exists. The legacy is therefore adeemed. (*See Baker* v. *Raynor,* 5 *Madd.* 217. *Purse* v. *Snaplin,* 1 *Atk.* 414. *Barton* v. *Cook,* 5 *Ves.* 464. *Humphrey* v. *Humphrey,* 2 *Cox,* 184. *Pest* v. *Camelford,* 3 *Bro. C. C.* 170. *Sibley* v. *Perry,* 7 *Ses.* 522. *Carlton* v. *Griffiths, Burr.* 554. *Perkins* v. *Mickelthwaite,* 1 *P. W.* 275. *Coppin* v. *Ferryhough,* 2 *Bro. C. C.* 297. *Drinkwater* v. *Falconer,* 2 *Ves.* 626. *Roome* v. *Roome,* 3 *Atk.* 180. *Carte* v. *Carte, Id.* 176. *Abney* v. *Miller, Id.* 597. *Manwood* v. *Turner,* 3 *P. W.* 166. *Pierson* v. *Stone,* 1 *Atk.* 479. *Arnold* v. *Arnold, Dick.* 645. *Ashburn* v. *McGuire,* 2 *Bro. C. C.* 110. *Hayes* v. *Hayes,* 1 *Keen,* 97. *Ashe* v. *Beary,* 1 *Beat.* 255. *Colleton* v. *Garth,* 6 *Sim.* 19. *Gardner* v. *Hatton, Id.* 93. *Gilbreath* v. *Winters,* 10 *Ohio,* 64. *Cogdall's Ex.* v. *His Widow,* 3 *Dessau.* 368. *White* v. *Winchester,* 6 *Pick.* 48.)

All these cases unite in asserting the rule, that if a specific legacy do not exist at the death of the testator, it is adeemed. It is a rule which prevails, without regard to the intention of the testator, or the hardship of the case. In this very case, there can be no doubt, that the real purpose of the testator will be defeated, and the ademption of the legacy will operate as a hardship upon the legatee. But the law is too firmly settled to admit of relaxation, however peculiar or pressing the circumstances. The thing given is gone, and no court is at liberty to substitute a different thing for that which the testator had himself given.

The other questions which have been raised may be disposed of in a few words. By the bequest of the moneys of which the testator should die possessed, to Mrs. McGillis, she became entitled to the cash, using the term in its popular sense, which at the time of his death the testator had in his possession or de-

posited in bank, and to nothing else. (*Mann* v. *Executors of Mann*, 1 *John. Ch.* 231.) The Kirk bond and mortgage, the Smith bond and mortgage, the rent due from Toole, and the insurance money due upon the policies upon the Market-street buildings, were all debts due to the testator at the time of his death, and are undisposed of by the will.

Nor can the bequest of "all bonds and mortgages for sales already made or hereafter to be made of lands in the county of Warren" be construed to embrace contracts for the sale of such lands where no deeds had been executed. Such lands will pass under the general devise in the second paragraph of the codicil.

There must be a decree declaring the construction of the will according to these principles, and reserving to any of the parties the right to apply to the court hereafter for such further directions as may be deemed necessary. The decree may also, if it is desired, contain the necessary provisions for passing and settling the accounts of the executor, and the distribution of the estate.

I think the costs should be charged upon that portion of the estate which has not been disposed of by the will. But as nothing was said, in relation to the costs, upon the argument, the parties, if this disposition of the costs is not assented to, may be heard upon that question, upon the settlement of the decree.

