SAMUEL A. HAZARD *vs.* THOMAS C. GUSHEE, Ex. *et al.*

JUNE 26, 1913.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(*1*)   *Wills.*

After bequeathing certain pecuniary legacies a will provided "If any such persons are not living at the time this instrument is executed, the bequest made to them shall be equally divided between those hereinbefore named."

*Held*, that the words "at the time this instrument is executed" referred to the death of testator rather than to the time the will was signed and published, this construction being consistent with the scheme of the will and with the provisions of Gen. Laws, 1909, cap. 254, § 6.

(*2*)   *Wills.*

In the first clause of a will testator bequeathed various pecuniary legacies to relatives.   In the following clause he provided "I bequeath to the persons hereafter mentioned the following sums.   If any of such persons are not living at the time this instrument is executed the bequest made  to them shall be equally divided between those hereinbefore named.   Then followed pecuniary legacies to various legatees, one of them being to X. for $1,000, and providing further, "I also give, devise and bequeath to X. anything that remains after satisfying the above bequests whether real or personal." X. died during life of testator leaving no issue.

*Held*, that it was the intent of the will that in case any of those named in the second clause should predecease testator, the bequest to such person should lapse and be equally divided between those mentioned in the first clause.

*Held*, further, that where certain of the legatees in the first clause died during the life of testator leaving issue living at his death, such issue not only took the pecuniary legacy bequeathed to the deceased ancestor, but also took *per stirpes* equal parts of such legacies given under the second clause as failed by reason of the death of the legatees named in the second  clause.

*Held*, further, that the bequest to X. should be equally divided between the surviving legatees and the issue of deceased legatees (*per stirpes*) under the first clause, the heirs at law of testator having no interest therein as intestate estate.

(*3*)   *Wills.   Specific Legacies.   Ademption.*

By a testamentary provision certain "mortgages on western farms, amounting to something more than five thousand dollars" were left in trust, the income to be paid to X. for life, and on her death the corpus to be divided equally among various institutions.

No such mortgages and no trace of funds derived therefrom were found.

*Held*, that the bequest was a specific legacy and had been adeemed.

BILL IN EQUITY for construction of will.

PARKHURST, J.   This is a bill in equity to determine the true construction of the will of Gustine L. Hurd, deceased, and for instructions to the complainant as administrator with the said will annexed.   The cause being ready for hearing for final decree it was duly certified to the Supreme Court by decree of the Superior Court entered the 12th day March, A. D. 1913.   By stipulation dated March 18, 1913, and filed in court, the complainant and the several respond-

ents, who have appeared, are agreed that for the purposes of the case the facts set out in the bill of complaint may be taken as true; decree *pro confesso* has been duly entered against the other respondents who have not appeared. These facts, so far as they affect the questions raised by the bill and answers are set forth substantially as follows in the bill of complaint:

Gustine L. Hurd deceased at said Providence on the first day of October, A. D. 1910, leaving a last will and testament, of which the following is a true copy.

"I, Gustine L. Hurd, of the City and County of Providence State of Rhode Island do hereby make and declare this to be my last will and Testament.

"I desire that such worldly estate as I may die seized of; or to which I may be entitled at the time of my decease, by inheritance or otherwise, shall be disposed of in the following manner, to wit:—

"After the payment of all charges connected with my sickness and burial and other just debts I give and bequeath to the following named persons, their heirs and assigns the following sums:—

"1st.   To my uncle Lewis Vickery of Hillsborough Upper Village, New Hampshire, one thousand dollars................................... $1,000.

"2nd.   To my Cousin Daniel L. Vickery, of East Washington, New Hampshire, five-hundred dollars.................................... $500.

"3rd.   To my Cousin Jennie E. Vickery of Hillsborough, Upper Village, New Hampshire, five-hundred dollars......................... $500.

"4th.   To Rachel Vickery, widow of my uncle Benjamin Vickery, of Hillsborough, Lower Village, New Hampshire, three-hundred dollars........ $300.

"5th.   To Ellen Vickery, my cousin, divorced wife of Samuel Strickland, of Hillsborough, Lower Village, New Hampshire, three-hundred dollars.. $300.

"6th. To my cousin Shubael W. Hurd of Washington, New Hampshire, five hundred dollars.. $500.

"7th. To my Cousin Henry Hurd of East Lempster, New Hampshire, five-hundred dollars..... $500.

"I also give and bequeath to the persons hereafter mentioned the following sums. If any of such persons are not living at the time this Instrument is executed the bequest made to them shall be equally divided between those hereinbefore named

"1st. To my Aunt Emily Vickery of East Washington, New Hampshire, one-hundred-dollars for the purchase of some keepsake.............. $100.

"2nd. To Mrs. Lurena Corliss of Providence, R. I. one-hundred dollars................... $100.

"3rd. To Charles Hazeltine, Providence, R. I. one hundred dollars....................... $100.

"4th. To Charles H. Prouty of Providence, R. I. (Sherburne St.) three-hundred dollars......... $300.

"5th. To Annie B. Lovejoy, of Providence, R. I. three-hundred dollars..................... $300.

"6th. To Jennie G. Irwin of Providence, R. I. (Pearl St.) fifteen-hundred dollars............ $1,500.

"Also such works of the Poets as I may possess, three pictures from among my oil paintings that she may choose and Websters Unabridged Dictionary.

"7th. To Maria L. Smith so long connected with our family, one-thousand dollars................. $1,000.

"I also give, devise and bequeath to the said Maria L. Smith, her heirs and assigns anything that remains after satisfying the above bequests whether real or personal (with the exception of Mortgage securities directly to be mentioned) including the Furniture and all the belongings of house-keeping at 98 Cranston St. Providence, R. I. my watch and chain and all other jewelry, books, and pictures, except such as hereinbefore mentioned, and Portraits of my Father and Mother.

"I desire that the Mortgages on Western farms standing in the name of myself and my late Mother Laura V. Hurd,

amounting to something more than five-thousand dollars, shall be held in trust by the Executor of this will and reinvested when they expire in the best manner consistent with safety; the income therefrom to be paid to the said Maria L. Smith, annually during her life;. and the entire amount then given in equal parts to the Institution designated as the Old Mens Home in Providence, R. I., and The Shedd Free Library in Washington, New Hampshire, the latter upon the Same conditions as those of the bequest of Sarah Shedd the founder of the Library.

"I desire also that the provisions of this will shall not be published in the newspapers.

"And lastly I nominate, constitute and appoint William H. Latham, of Providence, R. I. sole executor to carry out the provisions of this instrument.

"GUSTINE L. HURD.

"Signed sealed published and declared by the said Gustine L. Hurd as and for his last will and testament in our presence who have in his presence and in the presence of each other and at his request hereto set our names as witnesses this tenth day of July A D 1885

"LOUIS L ANGELL

"ISAAC W. SAWIN"

This will was duly probated in Providence, November 22, 1910.

The testator Gustine L. Hurd was never married.

Lewis Vickery, mentioned in clause one of the first part of the will, died before the testator, leaving issue living at the death of testator, as follows: Daniel L. Vickery, a son, Mary E. Myers, a daughter, Jennie E. Vickery, a daughter, George C. Vickery, a son, all living when the bill was filed.

Daniel L. Vickery (clause 2d of first part) was living when the bill was filed.

Jennie E. Vickery (clause 3d of first part) was living when bill was filed.

Rachel Vickery (clause 4th of first part) died before

testator; she had three children Ellen, Elizabeth and
Rodney Vickery, all of whom died before testator; Ellen
Vickery married Samuel Strickland and had five children,
Flora, Cora, Belle, Norman and Clarence; Flora married
Eugene Hoyt, and was living when the bill was filed; Cora
married and died before the death of testator, leaving a
daughter Maude M. Robinson, living when bill was filed;
Belle married Bertram Nichols, and died before death of
testator, leaving a daughter Ella G. Nichols living when bill
was filed; Norman and Clarence Strickland were living
when bill was filed.

Elizabeth M. Vickery married John Strickland, and died
before testator, leaving one son, Chester Strickland, who
was living when bill was filed.

Rodney Vickery died before testator, leaving two sons,
Frank Vickery and Eugene Vickery, who were living when
the bill was filed. The above named living persons are all
of the issue of said Rachel Vickery, living at the death of the
testator.

Ellen Vickery (clause 5th of first part) died before the
testator, and is the same Ellen Vickery above named,
daughter of Rachel Vickery, and her issue are as above set
forth.

Shubael W. Hurd (clause 6th of first part) died before
testator, leaving a son, Fred O. Hurd, and a daughter, Alice
M. Brown, both living when bill was filed.

Henry Hurd (clause 7th of first part) died before testator,
leaving two sons, viz.: Frank E. Hurd, Edson A. Hurd;
also the children of his deceased daughter Nellie M. Hurd,
viz.: Frank, Alton, Leo, and Clarence Hodgman and
Edna E. Lund; all living at death of testator.

It thus appears that, of the seven persons mentioned in
the seven clauses of the first part of the will, Daniel L.
Vickery and Jennie E. Vickery survived the testator and
were living when the bill was filed, and the other five persons
predeceased the testator leaving lineal descendants who
were living when the testator died and when the bill was
filed.

It further appears that all of the persons mentioned in the seven clauses of the second part of the will died without issue prior to the death of the testator, excepting Annie B. Lovejoy mentioned in the fifth clause of said second part, who died February 12, 1912; and Jennie G. Irwin mentioned in the 6th clause of said second part, who died January 8, 1911; and that Howard L. Wheeler and Adeline M. Wheeler are the executors of the will of Annie B. Lovejoy; and that Thomas C. Gushee is the executor of the will of Jennie G. Irwin.

It further appears that no mortgages on western farms, standing in the name of the testator or his mother were found after testator's death, after diligent search by the administrator, and that he has not been able to trace the proceeds of any such mortgages as a part of the testator's estate.

The complainant asks for the construction of the will and the instructions of this court in the particulars set forth in the following questions, viz.:

"a. Do the words 'at the time this instrument is executed' as used in the beginning of the second part of said will, which is as follows: 'I also bequeath to the persons hereafter mentioned the following sums. If any such persons are not living at the time this instrument is executed, the bequest made to them shall be equally divided between those hereinbefore named,' refer to the date of the signing of the will by the testator, the date of the death of the testator, the date of the probate of the will, or some other date?

"b. Certain legatees mentioned in the first part of said will died during the life of the testator, leaving issue living at his death. Do such issue take anything under this provision in the second part of said will:—'If any of such persons are not living at the time this instrument is executed, the bequest made to them shall be equally divided between those hereinbefore named?'" In other words, do the words 'those hereinbefore named' include the issue of legatees who

died during the life of the testator leaving such issue living
at the time of his death?

"c.   If the words 'at the time this instrument is executed'
refer to the date of the signing of the will, do the estates of,
or the issue living at the time of the death of the testator,
of the legatees (other than said Old Mens Home and the
Shedd Free Library) named in the second part of said will,
who died after the signing of the will and before the date of
the death of the testator, take anything under said will?

"d.   The Maria L. Smith, to whom by the provisions of
the second part of the said will is given, devised and be-
queathed anything that remains (with the exception of
mortgages and securities expressly excepted) after satis-
fying the specific legacies, died during the life of the testator,
leaving no issue.   Does the bequest to her pass under the
above named provision of said will, which provides 'if any
such persons are not living at the time this instrument is
executed, the bequest made to them shall be equally divided
between those hereinafter named," or is it intestate estate
descending to the heirs-at-law of the testator?

"e.   What, if anything, do The Home for Aged Men and
Aged Couples in Providence, R. I., and the Shedd Free
Library in Washington, New Hampshire, take under this
will, there having been no mortgages on Western farms
standing in the name of the testator or his late mother,
Laura V. Hurd, at the time of the death of the testator, or no
proceeds of such mortgages so far as your orator has been
able to ascertain?

"f.   What, if anything, are the heirs-at-law of the testator
entitled to?"

In answer to question "a," set forth above, we are of the
opinion that the words, "at the time this instrument is
executed," refer to the time of the death of the testator,
rather than to the time when he signed and published the
will.   The will was signed twenty-five years before his
death.   He knew that all the person mentioned in the will
were living at that time.   All of those named in the first

part were near relatives living in New Hampshire; of those named in the second part of the will one was a near relative living in New Hampshire, and the rest were close friends, and all lived in Providence. The testator could hardly have been in doubt as to whether any of them were living when he signed his will; and we think the scheme of the will indicates that it was his intention, in making the bequests enumerated in the second part to these close friends, that such bequests should go to them personally as such friends in case they survived him; but, in case of the decease of any of them before him, then to go to his relatives, named in the first part of the will. It is a general principle of the construction of wills that the testator expects the will to speak from his death, unless he plainly manifests a contrary intention. 1 Redfield, Law of Wills, p. 359 and cas. cit. *infra.* And our statute explicitly recognizes such general principle in the provision of Gen. Laws, R. I. cap. 254, § 6, as follows: "Sec. 6. Every will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall expressly appear by the will."

As stated above, we do not find any such "contrary intention" in the will, but rather that the testator's intention is quite consistent with the principle and the statute above quoted.

In the case of *Scott* v. *Guernsey,* 60 Barb. N. Y. 163, 175, 176, the testator, several times in his will, used the words "at the time of *executing* this my last will," in connection with several bequests; thus (p. 176): "I give to my three daughters now living, and to the heirs of Lydia Chichester (a deceased daughter) all my household furniture, two thirds at my decease, and the other third after their mother's decease, to be equally divided into four parts" . . . "should it so happen, in the course of divine providence, that any of my daughters should be dead, and leave no heirs living *at the time of executing this my last will,* then their

shares to be equally divided," &c.; then follow other clauses of the same character; and the opinion proceeds: "The 'executing' spoken of in these clauses, cannot mean the signing and publishing of the will, but evidently refers to a subsequent time, and must mean the going into execution of the provisions of the will with which the clause, as it occurs, is connected."

See, also, *In re Lamb's Estate*, 122 Mich. 239 and *Lambert v. Harvey*, 100 Ill. 338, in which cases similar words were (2) construed not to refer to the time of signing and publishing the will, but according to the plain intent of the will, to a time subsequent thereto. In view of this construction, it is plain that the testator intended that in case any person named in the second part of the will should survive him, such person should take the bequest made to such person; but in case any of those named in the second part of the will should predecease the testator the bequest to such person so dying should lapse and be "equally divided between those hereinbefore named," *i. e.*, between those relatives specifically mentioned in the first part of the will. In other words, each of the bequests in the second part of the will is contingent upon the survival of the beneficiary.

In answer to question "b," it is plain from the language therein quoted, in connection with that part of it above construed, that by the first clause of the will certain pecuniary legacies were directly bequeathed to the persons therein named, which passed respectively to the issue of such of them as died before the testator leaving issue who survived the testator, so that, as to these direct pecuniary legacies, the surviving issue of any one of the deceased legatees take the legacy bequeathed to the deceased ancestor. (See Gen. Laws, R. I. 1909 cap. 254, §31.) By the second part of the will, giving bequests to the several persons therein named, contingent upon their survival of the testator, and providing that: "If any of such persons are not living at the time this instrument is executed, the bequest made to them shall be equally divided among those hereinbefore named," it was

the intention of the testator to give an additional bequest to those named in the first part, contingent upon the non-survival of any of those mentioned in the second part. We are of the opinion that the issue of the legatees named in the first part of the will who did not survive the testator take *per stirpes*, equal parts of such legacies given under the second part of the will as have failed by reason of the death of the legatees named in the second part. Question "b" is therefore answered in the affirmative.

In answer to question "c," as we have already determined the construction and effect of the words therein referred to, and of the bequests to persons named in said second part of the will, the question is answered in the negative.

In answer to question "d," we find, under the construction heretofore given, that the bequest to Maria L. Smith, like the other bequests in the second part of the will, should be equally divided between the surviving legatees and the issue of deceased legatees (*per stirpes*) under the first part of the will. The heirs at law of the testator have no interest therein as intestate estate.

(3) In answer to question "e," we find that the Home for Aged Men and Aged Couples in Providence, R. I., and the Shedd Free Library in Washington, N. H., take nothing under the will. The bequest for the benefit of these two institutions was of "mortgages on western farms standing in the names of myself and of my late mother, Laura V. Hurd, amounting to something more than five thousand dollars;" and (after the death of Maria L. Smith who was to have the income therefrom for life) these institutions were to have the entire proceeds in equal shares. It appears that no such mortgages were ever found after the death of the testator, and no trace of any such funds as might have been derived from them was ever found. There is nothing to determine what amount, if anything, was ever realized therefrom so that there is nothing whereby it would be possible to fix the amount of the funds which the testator evidently intended to be given to these institutions. Under such

circumstances, it is not possible for this court to enforce any such provision. It may be conjectured either that nothing was ever realized from such mortgages or that the testator used such proceeds as there were, if any, for such purposes as he saw fit. We are forced to regard this as a specific legacy and as adeemed. 2 Redfield, Law of Wills, 131, et seq. See *Walton* v. *Walton*, 7 Johns. Ch. *258; *Beck* v. *McGillis*, 9 Barb. 35; *Gilbreath* v. *Winters' Ex'rs.*, 10 Ohio, 64.

Counsel for these institutions have urged that the facts here present a case of a demonstrative or pecuniary legacy rather than of a specific legacy and cite in support of that contention the case of *Mahoney* v. *Holt*, 19 R. I. 660, as being in no way distinguishable from the present case. But in *Mahoney* v. *Holt*, the subject of several legacies was a number of shares of common stock in the U. S. Rubber Co., a local corporation in actual existence at the time of the suit, in which the testator had owned at the date of his will a sufficient number of shares to have satisfied all these legacies, but had disposed of most of them prior to his death. It was perfectly possible to purchase these shares in the market or to ascertain their market value; and this court declined to consider the language of the will as giving specific legacies which were adeemed, because the will did not "distinguish or identify the shares given by any particular bequest from any other of the 3,257 shares owned by the testator and standing in his name on the books of the company at the date of the execution of the will." The court, therefore treated these as pecuniary legacies, following the case of *Pearce* v. *Billings*, 10 R. I. 102. We think that neither of these cases has any bearing upon the case at bar. Here the legacy is of a specific nature, but is extremely indefinite in that is uses the words "mortgages on western farms," without any words of location, or any statement of definite amounts, and could only be ascertained as to its value by the actual discovery of the mortgages and the realization of their value. The same counsel also call our attention to the case of *Le Grice* v. *Finch*, 3 Mer. 50, as being in support of their

contention. There the gift was of £500 which "we have now out on mortgage," and was treated by the Master of the Rolls as a pecuniary legacy, not as a gift of the mortgage, and held that the mere fact that it was said to be "now out on mortgage" was of no consequence, and so that the legacy was not adeemed when the testatrix in her lifetime collected the amount and made use of it for her own purposes. Counsel admit frankly that this case "has been severely criticised as inconsistent with ademption principles;" but however this may be, it is quite evident that it has no application to the case at bar since the value of £500 neither more nor less is ascertained by the will itself; whereas in the will here in question there is no definite ascertainment even of the original sum invested in mortgages on western farms, and no information whatever as to what, if anything, was ever realized thereon.

In answer to question "f," having found that the whole estate of the testator is disposed of by the provisions above construed, we find that the heirs at law of the testator are entitled to nothing, as heirs at law.

It is plain also that the legacies in the second part of the will to Annie B. Lovejoy and Jennie G. Irwin became vested in them at the death of the testator, they having survived him, and that the amounts thereof are respectively payable to their respective executors, to wit, to Howard L. Wheeler and Adeline M. Wheeler, executors of the will of Annie B. Lovejoy and to Thomas C. Gushee, executor of the will of Jennie G. Irwin.

The cause will be remanded to the Superior Court for further proceedings in accordance with this opinion.

*Clarence A. Aldrich*, for complainant.

*Benjamin W. Smith, Benjamin W. Grim, Tillinghast & Collins, Harold B. Tanner, Gardner, Pirce & Thornley*, for various respondents.