Jewett, J.
 

 — The parties agreed upon and submitted a case to the supreme court, containing *the facts ^ upon which the controversy between them de- *- pended, pursuant to § 372 of the code, on which, that court rendered a judgment in favor of the plaintiffs, from which the defendant has appealed. The single question for determination is, whether the plaintiffs have power, under and by virtue of the will of Thomas Poole, deceased, and the several acts of the legislature men
 
 *342
 
 tioned in the case, and the proceedings had under them, or under either, to convey to the defendant a valid title, in fee-simple, in and to the lands and premises which they contracted to sell and convey to him, mentioned and described in the agreement set out in the case.
 

 Thomas Poole, on the 10th day of August 1831, made his last will and testament, in due form of law to pass real estate in this state, and shortly thereafter, in the same year, died, leaving his said will in full force, which in December 1831, after his death, was duly proved and recorded as a will of real estate, in which the plaintiffs were named as executors thereof. At the time of the making of his will, and at the time of his death, the testator was seised in fee-simple absolute, of the premises in question; and by his will, devised said premises, with certain other lands, to his executors, in
 
 trust,
 
 that they, in their discretion, might permit the testator’s daughter, Eliza, then the wife of John Powers, to occupy the same, or any part thereof, for and during her natural life; or rent the same, or any part thereof, during the same period, to any person or persons, from year to year, or for a higher term, and take and receive the rents and profits accruing from the same, and therewith make all necessary repairs, and pay all taxes and other necessary charges and expenses in and about the same, and after deducting all such payments, said executors were required, annually, to pay over the residue of such rents and profits to the testator’s said daughter Eliza, for and during her natural life, to her sole and separate use and benefit, upon her individual receipt, notwithstanding her then, or future, coverture; and upon the death of his said daughter Eliza, the testator devised said lands and premises, with the *appurtenances, in fee-simple, as -* tenants in common, to the lawful issue of his said daughter, if more than one, share and share alike; and for want of such issue, then, to all his grandchildren, then living, as tenants in common, and to his, her or
 
 *343
 
 their heirs and assigns for ever. The case shows that the testator’s daughter Eliza is still living 'and has two children.
 

 The plaintiffs, being the executors named in the will, took a legal estate in the premises devised, for and during the natural life of Eliza, the daughter of the testator, in
 
 trust,
 
 either to permit her to occupy, or to rent the same, or any part thereof, as they should judge most
 
 expedient;
 
 and in case they should rent the same, to receive the rents and profits thereof, and to pay over to her, for her separate use, such portion thereof as should, from time to time, remain in their hands, after satisfying the expenses of all necessary repairs of the premises, to be made by them, from time to time, and all taxes and other necessary charges and expenses attending the execution of said trust.
 

 The two children of the daughter, Eliza, have a vested estate in remainder, in fee, in the premises in question, as tenants in common, in equal parts, subject to open and let in after-born lawful issue of their mother, as tenants in common with them, and liable, however, to be divested, by their deaths, during the lifetime of their mother. The grandchildren of the testator (other than the children of Eliza), living at her death, have a contingent estate in remainder, depending upon the event of the death of the daughter Eliza, without leaving any lawful issue surviving her. (1 R S. 723, §§ 9, 10,11,13.)
 

 The plaintiffs derived no authority, under the will, to sell and convey to any one, a valid title in fee, to the premises in question. The extent of their power to dispose of said lands was, to lease the same, during the life of the testator’s daughter Eliza. The trust upon which they hold the estate, being expressed in the will creating it, any sale or conveyance thereof by them in contravention of such trust, would be absolutely void. (1 R g. 730, § 65.) It is not, however, contended, that the plaintiffs have power to sell and convey the estate in fee,
 
 *344
 
 * 3611 un^ess ^ *s conferred. on them *by the act of the -* legislature referred to, and their proceedings had in pursuance .of its provisions. The question then is, is -such power conferred, by said act of the legislature and the proceedings under it ?
 

 By the first and second sections of the first act, entitled “an act for the relief of Eliza Powers and others,” passed 14th March 1837 (Laws of 1837, p. 46), it was enacted, that it should and might be lawful for the plaintiffs, executors and trustees in the last will and testament of Thomas Poole, late of the county of Kings, deceased, at any time within ten years from the passage of the act, upon giving such security as might be required by the chancellor, or the vice-chancellor of the first circuit, from time to time, either publicly or privately, as the chancellor or vice-chancellor of the first circuit might order and direct, sell such parts of certain lands and premises, described in said act, and being the lands, or a portion thereof, so devised by said testator, as they might deem most beneficial to the persons interested therein. And the said plaintiffs were, by the words of the act, authorized, in- case of a sale, after the same should be ratified and confirmed by the chancellor or vice-chancellar of the first circuit, to make and execute good and sufficient deeds or conveyances in the law, to the purchaser or purchasers thereof; which deeds or conveyances, so to be made and executed, should convey to the purchaser or purchasers thereof, all the estate, right, title and interest, which the said Thomas Poole had, at the time of his death, in and to the premises so conveyed. The 3d section of said act assumed to constitute the plaintiffs trustees to carry into effect the trusts declared in and by said will of said Thomas Poole, deceased, in relation to the premises described in the act, in pursuance of the provisions and directions of such will, and out of the
 
 proceeds
 
 of such sale or sales as they should make, under and by virtue of the act, the plaintiffs were
 
 *345
 
 required to pay and discharge all taxes, assessments, liens, charges and incumbrances whatsoever, then, or at any time thereafter, during the continuance of said trust, assessed or imposed upon the said lands, and premises so devised; and as to the surplus moneys *that should remain .in their hands, after such _ ^ payments, and also the incidental charges and *- expenses, the plaintiffs were required to invest, from time to time, in such permanent securities as the chancellor or vice-chancellor of the first circuit should direct; which securities, together with the mortgages which were authorized by the 2d section to be taken for a proportion of the purchase-money, not exceeding one-half part thereof, and such part of the said devised premises as might remain unsold, were required to be held by said plaintiffs in trust, according to the terms of said will; that is to say, to pay over the interest and income thereof, from time to time, and as the same should become due and be received by them, unto the testator’s said daughter Eliza, during her natural life, and after her decease, to convey, assign or pay over the same, to the lawful issue of the said Eliza, if more than one, share and share alike; and for want, or in default of, such issue, then to all the grandchildren of the said tester who might then be living. The plaintiffs, by the 4th and 5th sections of said act, were required, to account annually to the chancellor, or said vice-chancellor, and were made subject to the control of the court of chancery.
 

 i This act, it seems, expired by its own limitation, without any sale or disposition being made of the premises devised by the testator, or any part thereof; which furnished an occasion for the legislature, on the 21st of March 1849, to pass a second act in respect to selling and disposing of the lands in question, entitled “an act authorizing the executors and trustees of Thomas Poole, formerly of Brooklyn, deceased, to sell certain portions
 
 *346
 
 of his real estate” (Laws of 1849, p. 151); the first section of which revived and continued the 1st and 2d sections of the previous act of 1837, as modified by the last act. 'The 2d section assumed to authorize the plaintiffs, as executors and trustees of said will, and the survivor of them, to sell the lands described and referred to in said two sections, or any part thereof, from time to time, during the life of the said Eliza, the daughter of said testator, with like effect as if such sale had been made within the time limited in and by said two sections.
 

 * 363 1 3d section, the proceeds of any such ^ sale were required to be applied as follows: 1. To the payment of the commissions, costs and expenses of the plaintiffs, to be allowed and ascertained as provided for by § 7. 2. To the discharge of all assessments, liens, charges and incumbrances whatever, then charged, or which, at any time thereafter, might be charged, assessed or imposed on said lands, or any part thereof; and to the reimbursement of any money or moneys paid, or which might be thereafter paid, by the plaintiffs, or< either of them, in the discharge of such assessments, liens, charges and incumbrances, or for the redemption of any such lands, or any part thereof, from sales made for the satisfaction thereof, or in the transfer of any certificate or certificates of such sales, with legal interest and expenses. 3. The surplus to be invested for the uses and purposes, and the interest thereof, after the payment of the annual taxes, applied, as is provided and directed in and by the 3d section of the act of 1837, above referred to. ’ •
 

 The 6th section allowed the sales so to be made, to be either public or private, as should be directed by one of the justices of the supreme court, or the county judge, of the county of Kings, and when confirmed by such justice or judge, a conveyance was authorized to be executed to the purchaser or purchasers, and which, it wag ’
 
 *347
 
 declared, should convey to such purchaser or purchasers, all the estate, right, title and interest which the said Thomas Poole had, at the time of his death, in and to the lands and premises so conveyed. The plaintiffs were required to give such security for the faithful performance of their duties in relation to any sale or sales to be made, as should be required by such justice of the supreme court or county judge, each of whom, it was enacted, should possess all the powers conferred on the chancellor and vice-chancellor of the first circuit, in and by the act above referred to.
 

 By the 7th section, the executors and trustees aforesaid were declared to be entitled to receive a reasonable commission on the sale or sales, so to be made by them, not exceeding five per cent., as a compensation for their trouble, and their reasonable *costs and expenses ^ incidental to their application for the said act, *- and the sale or sales to be made by them, to be fixed, determined and allowed by a justice of the supreme court, or the county judge of Kings county. The 8th section required the trustees to report annually to one of the justices of the supreme court, or county judge of Kings county, as required by the 4th section of the act of 1837, the report to he filed in the office of the clerk of Kings county. The 9th section authorizes any of the justices of the supreme court, or the county judge of Kings county, to remove any or either of the eaid trustees, for cause, and confers on them, or either of them, power to fill any vacancy occasioned by such rer moval, or by death or otherwise.
 

 There is nothing appearing upon the face of either of these statutes, or by the case, showing what facts existed to induce the legislature to enact them, and thereby, assume to authorize the sale of the lands mentioned; and to provide that the title which Thomas Poole, deceased, at the time of his death, had to them, should pass to the purchasers thereof, and thus to deurive his
 
 *348
 
 devisees in remainder of their' estate in them. No question is presented, as to the power of the legislature to authorize a sale of real estate, to discharge assessments or other charges upon the inheritance, when the fee is contingently limited and the persons in whom the same must vest are uncertain. The act in question does not profess to ascertain the existence of any such assessments, nor has it delegated the power to ascertain that fact, to any tribunal or officer, nor does it direct the parties whom it undertakes to authorize to sell, to ascertain whether such assessments exist, nor does it make the power to sell dependent on, or declare it to be limited by, the necessity for such sale to defray assessments. It is, therefore, to be regarded, as if it contained nothing on the point of assessments, and was a mere declaration that the executors should have power to sell. This view of the act more certainly appears to be correct, by reference to ch. 341 of the Laws of 1841, which confers upon the court of chancery all necessary power to adjust contributions to the payment of assessments among the * qck i Parties interested in the *lands on which the as-J sessments are imposed.
 

 The case merely shows that, on the 10th day of February 1851, a petition was presented by the plaintiffs, as trustees, to a justice of the supreme court, at a special term of said court, setting forth that a sale of certain portions of the said premises would, for the reasons therein stated, be beneficial to the interest of the said Eliza, and those entitled thereto after her death, and asking for an order authorizing a sale, and for directions whether the sales to be made by them should be public or private, and for such other directions as to the court should seem meet. That an order was- thereupon made, referring it to a referee named, to inquire into the value and situation of the premises, and into the truth of the facts set forth in said petition; and also whether the sale or sales, to be made, should be public or private,
 
 *349
 
 and to report the facts and reasons on which his report should be founded, to the end that, upon the coming in of the report, such directions might be given as to the amount of security to be given at such sale, and the-manner of sale, and otherwise in relation thereto, as should be deemed necessary and proper in the premises, That said referee made his report, pursuant to said order, upon which the said justice of the supreme court, at a special term of said court, directed the security to be given by the plaintiffs for the faithful performance of their, duties in relation to any sale or sales to be made by them, as provided in the said acts, and directing also that such sale or sales should be private, unless directions to the contrary thereafter should be made. That the security required by the said order was given, approved and filed, as therein directed; and no direcr tians having been given to the contrary, after the filing of such security, a contract was entered into, on the 24th clay of March 1851, between the plaintiffs, as trustees as aforesaid, and the defendant, for a sale of a part of said lands and premises to the defendant, which, on being reported to the said justice of the supreme court, he, at such term, by an order made by him, approved of, ratified and confirmed the said sale, and directed the plaintiffs to execute a conveyance to *the purchaser upon his compliance with the terms and *- conditions of the said contract on his part to be performed.
 

 The effect of this statute, if valid to • accomplish its apparent object, is, to divest the owners in remainder, of these lands, of th )ir estate in them, and to sell and transfer it to another, through the agency of third persons, constituted trustees for such purpose, without their consent, at their expense, for commissions, costs and charges, to be allowed such trustees out of the proceeds of such sales, although no incapacity exists, by reason of infancy insanity or, otherwise, disqualifying the
 
 *350
 
 remainder-men from disposing of their estate in the lands themselves, if they desired to do so.
 

 . Conceding, that it is within the power of the legislature, in acting as the guardian and protector of those who are disabled to act for themselves, by reason of infancy, lunacy or other like causes, constitutionally to pass general or private laws, under which an effectual disposition or sale of their lands and other property may be made, in order to promote their interests; it does not follow, that it has such power of disposition over the property and effects of others, not thus incapacitated.
 

 Although it be true, that in England, private acts of parliament have become a common mode of assurance (2 Bl. Com. 344), and are upheld, upon the principle that the parliament is omnipotent (2 Kent’s Com. 448), that principle does not prevail with us. Here, the sovereign and absolute power resides in the people; and tffe legislature can only exercise such powers as have been delegated to it. The right of eminent domain, or inherent sovereign power, gives the legislature the control of private property for public uses, and only for such uses. In súch cases, the interest of the public is deemed paramount to that of any private individual. And yet even here, the constitution of the United States (Art. v. of the amendments), and the constitution of this state (Art. i., § 6), have imposed a salutary check upon the exercise of legislative power, for that purpose, by * 367 1 ProvidinS *^at Priva-te property shall not be taken for public use, without just compensation.
 

 It follows, that if the legislature should pass an act to take private property, for a purpose not of a public nature; as if it should provide, through certain forms to be observed, to take the property of one and give it (or sell it, which is the same thing in principle) to another, or if it should vacate a grant of property, under the pretext of some public use, such cases would
 
 *351
 
 be gross abuses of the discretion of the legislature, and fraudulent attacks on private rights, and the law would clearly be unconstitutional and void. (2 Kent’s Com. 340.) If the power exists, to take the property of one, without his consent, and transfer it to another, it may as well be exercised, without making compensation, as with it; for there is no provision in the constitution, that just compensation shall be made to the owner, when his property shall be taken for
 
 private
 
 use. The power of making contracts for the sale and disposition of private property for individual owners, has not been delegated to the legislature, nor to others, through or by any agency conferred on them for such purpose, by the legislature; and if the title of A. to property can, without his fault or consent, be transmitted to B., it may as well be effected without, as with, a consideration.
 

 In
 
 Wilkinson
 
 v.
 
 Leland
 
 (2 Peters 657), the late Judge Story says — “The fundamental maxims of a free government seem to require, that the rights of personal liberty and private property should be held sacred. At least, no court of justice, in this country, would be warranted in assuming that the power to violate and disregard them (a power so repugnant to the common principles of justice and civil liberty) lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people. The people ought not to be presumed to part with rights so vital to their security and well-being, without very strong and direct expressions of such an intention.” He added, “ we know of no case, in which a legislative act to transfer the property of A. to B., without his consent, has ever been held a constitutional exercise of legislative power in any *state in the - ^ Union. On the contrary, it has been constantly *- resisted, as inconsistent with just principles, by every judicial tribunal in which it has been attemnted to be enforced.”
 

 
 *352
 
 In
 
 Taylor
 
 v.
 
 Porter
 
 (4 Hill 140), I think, that Judge Bronson, in his very able discussion of the power of the legislature to deal with private property, has conclusively shown, that, except when taken for public use, the, legislature has no power to transfer the property of one, without his consent, to another. The principles involved in this case are further illustrated by the cases of
 
 Clark
 
 v.
 
 Van Surlay
 
 (15 Wend. 436),
 
 Cochran
 
 v.
 
 Van Surlay
 
 (20 Id. 365),
 
 Williamson
 
 v.
 
 Barry
 
 (8 How. 494),
 
 Rice
 
 v.
 
 Parkman
 
 (16 Mass. 326).
 

 The conclusion to which I have come is, that the plaintiffs cannot convey a valid title, in fee-simple, to the defendant, to the lands contracted to be sold him, described in the agreement set forth in the case; and that the deed tendered to the defendant would not, if accepted by him, convey to him such title. The judgment of the court below is, therefore, erroneous, and must be reversed, and judgment for defendant should be entered, with costs of the proceeding in the court .below.
 

 Judgment reversed, and judgment for the defendant, with costs.