Robert A. McGillis and Jessie McGillis, Plaintiffs, *v.* Ewen McGillis, Morrison M. E. Jarvis and Others, Defendants.

*Will — contingent remainder — removal of the disability of alienage by statute — judgment when binding upon persons unborn.*

William Caldwell, by his will, after devising certain property to his daughter, Eliza McGillis, for life, then to her husband (an alien) for life, provided: "From and after the decease of both my said daughter and her said husband, I give, devise and bequeath the remainder, or fee simple in said property, to the lawful issue of my said daughter then living, in such relative proportions * * * as they would, by the laws of the State of New York, have then inherited or taken the same from her in case she and they were then native-born citizens of said State, and she had then died intestate, lawfully seized of said property in fee simple."

At the time of the testator's death Eliza McGillis had four children, aliens, born before the death of the testator, who, in an action brought to obtain a judicial construction of the will, were held to be, under section 4 (2 R. S. 57), incompetent to take the remainder.

In a subsequent action, brought for the partition of certain of the real estate left by the testator, it was held that the above statute did not apply to four children of Eliza McGillis, who were born after the testator's death; that the decree in the aforesaid action, brought to obtain a construction of the will, was not binding upon them, and that they took the entire estate in remainder in the real estate devised to Eliza McGillis for life.

In 1887 a statute was passed, by which the State of New York released any right of escheat which it might possess on account of the alienage of the children of Eliza McGillis; and thereafter the four children of said Eliza McGillis, born before the death of the testator, conveyed to the four children born after the death of the testator, their interest, if any, in the real property left by the testator, under an agreement that the after-born children should share equally with the prior-born children in case the title to the remainder should be established. All the children also executed a deed of a portion of the property in question to an attorney, who, in consideration of such deed, agreed to conduct the proceedings to establish title in the issue of Eliza McGillis to the remainder.

Eliza McGillis died in 1893, after her husband, leaving six children and one grandchild, a son born in 1890 to one of the children (born after the testator Caldwell's death), who died intestate in 1891, before Eliza McGillis and subsequent to the execution of the conveyance to the attorney.

In an action to partition real property devised by the testator and to enforce the attorney's alleged lien on the property so conveyed, it was

*Held,* that the remainder devised "to the lawful issue of my daughter then living," *i. e.,* at the time of Eliza McGillis' death, was a contingent remainder;

That, although when the testator died there were no children in being who could take such remainder, the disability of the children then living might be removed, or other children, competent to take, might be born to her, and thus the persons to whom the remainder was limited, being uncertain, the remainder was, by the terms of the statute (1 R. S. 723, § 13), a contingent one;

That such remainder, although technically within the definition of the term "vested," as defined in the Revised Statutes, was liable to be divested and to open and let in after-born children of Eliza McGillis, and also those children whose disability of alienage might be removed by legislative act during the lifetime of the mother;

That the son of the after-born child of Eliza McGillis, who died before her death, was entitled to one-seventh of the remainder in fee (PUTNAM, J., dissented);

That such grandchild of Eliza McGillis was not, however, bound by the conveyance executed to the attorney, of a portion of the property in payment for the attorney's services in establishing title in the issue of Eliza McGillis to the remainder;

That the rule that "Where an estate is vested in persons living, subject only to the contingency that persons may be born, who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, representing the whole estate, stand, not only for themselves, but also for the

persons unborn," only operates to bind the person unborn, by proceedings in court, and by the judgment in the action, and he is not bound by contracts or engagements made by the parties, in whom the title to the estate is vested, not considered or passed upon in the litigation or validated or sanctioned by the judgment of the court.

MOTION by the defendant Morrison M. E. Jarvis for a new trial upon exceptions filed to the report of the referee and findings in the interlocutory judgment in an action brought to partition certain real estate in the counties of Albany and Warren in the State of New York.

The facts are more fully stated in the dissenting opinion of PUTNAM, J.

*Henry T. Kellogg*, for the defendant Morrison M. E. Jarvis.

*Marcus T. Hun*, for the defendants other than Morrison M. E. Jarvis.

*Henry W. Hayden*, for the plaintiffs.

LANDON, J.:

In the action of *Beck* v. *McGillis* (9 Barb. 35) the heirs of the testator obtained a decision which, as between them and the first-born four children of Mrs. McGillis, gave to the heirs the remainder upon the death of Mrs. McGillis. That is of no consequence here, since no party to this action claims under the heirs of the testator.

The judgment in the case of *Van Cortlandt* v. *Laidley* (59 Hun, 161) excluded the heirs of the testator from any title to the remainder, because the title to the same was vested in the four after-born children of Mrs. McGillis. But this case decided nothing in respect to the share of the infant, Morrison Jarvis, because he was not a party to the action. Whether his share is one-fourth or one-seventh is a question unprejudiced by the judgments in either of the actions mentioned.

I think his share is one-seventh.

The "remainder" to the "lawful issue of my said daughter then living," that is, at the daughter's death, was a contingent remainder. When the testator died, there were no persons in being who could take the remainder under the will. This was not any objection to

its validity. (1 R. S. 725, § 28; *Purdy* v. *Hayt*, 92 N. Y. 446.) The existing issue of Mrs. McGillis were then incompetent to take, because of their alienage. But the disability of their alienage might be removed; other children not subject to such disability might be born to her; thus the persons to whom the remainder was limited were uncertain, and thus a contingent remainder, as defined by the statute, was created. (1 R. S. 723, § 13; *Moore* v. *Littel*, 41 N. Y. 66; *Hennessy* v. *Patterson*, 85 id. 91, 104.)

This situation was contemplated by the testator, for by apt words he postponed until his daughter's death the determination of the individuals who should take the remainder, though he defined the class of persons who should take it. This the section of the statute above cited permitted the testator to do.

Upon the birth of a child to Mrs. McGillis, after the death of the testator, the remainder ceased to be contingent and became vested in that child, that is, as our courts have been constrained to use the term "vested" under the 13th section of the statute. Although vested, it was liable to be divested by the child's death in the lifetime of the mother, and also the interest of such child while living was liable to open and be diminished by the birth of after-born issue, and also by letting in the prior-born children the moment their disability through alienage should be removed. (*Campbell* v. *Stokes*, 142 N. Y. 23.)

In like manner, it may be said that upon the testator's death, since there was then no person in existence who could take the remainder under the will in case Mrs. McGillis had died before giving birth to another child, and before the disability of her first-born was removed, the remainder vested in the heirs of the testator as in case of intestacy, but if so it was liable to be divested, and was in fact divested by the coming into existence of her after-born child, or by the acquisition in her lifetime of the capacity by the prior-born to take under the devise.

This term "vested," as used in the 13th section of the statute, must be considered with reference to the subject-matter vested. We must distinguish, says Mr. Washburn, quoted in *Hennessy* v. *Patterson* (85 N. Y. 103), "between the vesting of a *right* to a future estate of freehold, the vesting of a *freehold estate* in interest, and the vesting of the same in *possession*." Now upon the birth

of the first child of the after-born children of Mrs. McGillis, the 13th section authorizes us to say that the remainder was solely vested in that child, because if Mrs. McGillis had then died, that child would have been the only person answering to the testator's designation of his ultimate devisee. But of what estate in the remainder was he vested? Of a present right to its future possession, a right liable to be diminished or defeated by possible future events inherent in the nature of his right and entirely beyond his control.

Thus the term "vested" is not here the exact opposite of "contingent," but is in a measure confused with it. It has the quality of opening and sharing, of ending and shifting in such a way that he who yesterday was the only person vested, to-day has others sharing with him, and to-morrow may be wholly divested, and this, too, against his consent. There probably is some lack of accuracy in using the term in this sense, some confusion of the common-law distinction between vested and contingent estates. Judge GROVER pointed it out in his dissenting opinion in *Moore* v. *Littel (supra)*, and it has not escaped other criticism (6 Alb. L. J. 361; Gray on Perpetuities, § 107), but the shifting sense has the support of authority.

The argument against the power of the Legislature to qualify the four first-born children of Mrs. McGillis to take the devise of the testator rests upon the assumption that title to the ultimate possession of the remainder absolutely vested either in the heirs of the testator or in the after-born children of Mrs. McGillis. But this argument wholly fails when we see that such vesting was not of the absolute right to the ultimate possession of the remainder, but of a contingent right to it, the contingencies inhering in the right as created by the testator, and only absolutely to be put at rest by the death of Mrs. McGillis. Then those who were within the class designated by the testator became vested of the remainder in possession, and until then all the issue of Mrs. McGillis were eligible to enter the class — the after-born by birth within it, the prior-born by the enabling qualification of the statute.

Thus the statute affected the right of the first-born to come within the class to be benefited by the devise, and this was plainly within the intention of the testator, and thus the statute aided his

purpose instead of defeating it. His heirs never acquired any title, because he was not intestate, and thus the statute did not affect them; the after-born held their title during Mrs. McGillis' life, subject to such laws as to the admission of the first-born as might be enacted. Such is the meaning of the will, and such was the nature of their interests. (*Matter of Baer*, 147 N. Y. 348.)

When Mrs. McGillis died, her lawful issue, capable of taking both under our statutes, and under the terms of the will, consisted of all her lawful issue then living, her six children, and the infant, Jarvis, her grandchild, and each took one-seventh of the remainder in fee. I agree with Mr. Justice PUTNAM that the share of the infant, Jarvis, is not bound by the contract made with Mr. Hayden.

I advise that so much of the interlocutory judgment as charges the share of the infant, Jarvis, with a lien in favor of Mr. Hayden, be reversed; in other respects that the judgment be affirmed; costs of both parties to be paid out of the fund.

PARKER, P. J., and MERWIN, J., concurred; PUTNAM, J., dissented; HERRICK, J., not sitting.

PUTNAM, J. (dissenting):

This action was brought for the partition of certain real estate in the counties of Albany and Warren, and for the enforcement of an alleged lien on other real estate known as the "Mansion House Property" at Caldwell, N. Y. in favor of the defendant Henry W. Hayden, on the interest of the defendant Morrison M. E. Jarvis, therein — the complaint asking that the property sought to be partitioned be divided equally between the six surviving children of Eliza McGillis, deceased, and the defendant Morrison M. E. Jarvis, the only child of Margaret Louisa Jarvis, a deceased daughter of Eliza McGillis, and that the defendant Morrison M. E. Jarvis may be directed to convey his interest in said "Mansion House Property" to the defendant Henry W. Hayden.

William Caldwell died in the year 1848, devising property in Albany and Warren counties to his daughter, Eliza McGillis, for life, to her husband for life, and after their deaths to her issue her surviving, in the following language: "From and after the decease of both my said daughter, and her said husband, I give, devise and bequeath the remainder, or fee simple in said property, to the lawful

issue of my said daughter then living, in such relative proportions (if such issue consist of more than one person), as they would, by the laws of the State of New York, have then inherited or taken the same from her, in case she and they were then native-born citizens of said State, and she had then died intestate, lawfully seized of said property in fee simple."

Eliza McGillis died in the year 1893, and subsequent to the death of her husband. She had married, on or about May 17, 1836, one John McGillis, an alien, and after such marriage resided with her husband in Canada where all her children were born. At the time of the death of the testator she had four children, who were aliens, viz., Mary Charlotte, William H., John and Elizabeth. The latter died without issue in 1890. After the death of William Caldwell said Eliza McGillis had four children, Ewen, Margaret Louisa, who married John H. Jarvis, and died intestate on May 1, 1891, leaving the defendant Morrison M. E. Jarvis her only heir, Robert A. McGillis and Mary Sophia, who married on March 8, 1887, Alexander A. R. McDonell. Thus Eliza left as her issue six children, three born before the death of the testator and three after, and one grandchild, the son of a daughter, also born subsequent to the decease of William Caldwell.

In the year 1850 an action was brought by the executor named in the will of William Caldwell, deceased, to obtain a judicial construction of its provisions. Eliza McGillis, her husband and her four children then living were made parties defendants. It was held in that action that the devise to Eliza McGillis for life was valid, she not being an alien, but that the devise to her husband and to her issue, they all being aliens at Caldwell's death, was void and inoperative under 2 Revised Statutes, 57, section 4, which provides that "Every devise * * * to a person who * * * at the time of the death of the testator, shall be an alien, * * * shall be void." (See *Beck* v. *McGillis*, 9 Barb. 35.)

Soon after an action was brought by the devisees of the other two-thirds share in the Warren county property to partition it. Eliza McGillis was made a party, but her children were not. In that action the property was divided. A life estate in one-third thereof was set off to Eliza McGillis and the fee therein to the heirs at law of the testator. No order confirming the report of the com-

missioners in partition was made or filed. This action was known as the suit of "*Van Cortlandt* v. *Laidley*." In the year 1887 four children other than those living at the death of the testator having been born to Eliza McGillis, proceedings were commenced by the defendant Henry W. Hayden to establish the title of such children to the fee in the Warren county property which had been set off in the said action to Eliza McGillis for life, and to the heirs at law of the testator in fee. Mrs. McGillis was then living and had eight children, the four named as defendants in the action of *Beck* v. *McGillis* (*supra*), and the four others born since the death of William Caldwell.

Mr. Hayden secured the passage of chapter 310 of the Laws of 1887, by which the State released any right of escheat which it might possess over the property in question on account of the alienage of the children of Eliza McGillis. The first-born four, on the 20th day of June, 1887, conveyed to the after-born four their interest, if any, in the property in question, on the agreement that the after-born four would share equally with them in case their title thereto should be established. The entire eight also executed a deed to Henry W. Hayden, their attorney, of a portion of the property known as the "Mansion House Property," and said Hayden, in consideration thereof, contracted to conduct the proceedings for them.

In July, 1888, the four children born after Caldwell's death were permitted to intervene in the aforesaid action of *Van Cortlandt* v. *Laidley* (*supra*), as the plaintiffs in a cross action against the heirs at law of William Caldwell, deceased. The rights of the children of Eliza McGillis to the remainder of the property set off in that suit to her for life, as against the heirs at law of William Caldwell, was the only issue in the cross action. It was there decided that the children of Eliza McGillis, born after Caldwell's death, not being aliens at that time, were not within the provisions of 2 Revised Statutes, 57, section 4, making devises to persons at that time aliens void; that, not being parties to the action of *Beck* v. *McGillis* (*supra*), they were not bound by the judgment therein; that they, and all subsequent born issue who should survive Eliza McGillis, were entitled to the remainder. (*Van Cortlandt* v. *Laidley*, 59 Hun, 161.)

The defendant Morrison M. E. Jarvis was born on July 1, 1888. His mother, Margaret Louisa Jarvis, died on August 1, 1891. The act of the Legislature, providing that foreign-born children of a woman born in the United States may hold real estate, was passed on the 2d day of March, 1889.

Two questions were presented on the trial: *First*, whether the defendant Morrison M. E. Jarvis was entitled to a one-seventh interest, or to a one-fourth interest, as he claimed, in the real estate in question. *Second*, whether, as against him, the agreement made by all the other parties in interest, and by his mother, by which, in consideration of services to be rendered by the defendant Henry W. Hayden, the Mansion House property at Caldwell was to be given to him, can be enforced.

The learned referee found in favor of the contention of the plaintiffs on both questions, and the defendant Morrison M. E. Jarvis appeals.

In the year 1887, when the defendant Henry W. Hayden commenced proceedings in behalf of the four children of Eliza McGillis, born subsequent to the death of William Caldwell (hereafter designated as the "after-born" children), those parties were *vested* with title to the remainder in the real estate in Warren county set off to their mother for life.

The devise in the will of William Caldwell, so far as it gave an interest in such remainder to the children of said Eliza born before his death, they being at the time of his decease aliens, was void. This had been adjudicated in an action in which the said children and the heirs of the testator were parties. (*Beck* v. *McGillis*, 9 Barb. 35.) But the devise of such remainder was valid as to the "after-born" children. (*Wadsworth* v. *Wadsworth*, 12 N. Y. 376.) They were entitled to the *entire remainder* so bequeathed (*Downing* v. *Marshall*, 23 N. Y. 366), except as against the State, whose right therein was released by chapter 310, Laws of 1887.

The above conclusions are authorized by the decision of the General Term of the third department in *Van Cortlandt* v. *Laidley* (59 Hun, 161). The trial court in that case found in reference to the children of Eliza McGillis born before the death of William Caldwell as follows: "As the above-named children of Eliza McGillis were, upon the death of William Caldwell, aliens, the said

devise to such issue by the will of William Caldwell was void under the provisions of section 4 of article 1st of title 1 of chapter VI of the Revised Statutes. The judgment of this court in the action of *Beck* v. *McGillis,* referred to in the findings of fact herein, was binding and conclusive upon all the parties to the said action." The judgment, which was afterwards affirmed by the General Term and the Court of Appeals, provided : " That the said fee or remainder in said property, partitioned and set apart therein to said Eliza McGillis for life, is vested in and owned by the lawful issue of the said Eliza McGillis, born subsequent to the death of William Caldwell, and their assigns, in the proportions provided and as specified by the said William Caldwell, deceased, in his said will and codicil."

We find, therefore, that at the time in question, under the decision in *Van Cortlandt* v. *Laidley* (*supra*), and under the provisions of 1 Revised Statutes, 723, section 13, which enacts that a future estate is vested " when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate," that Eliza McGillis had a life estate in the premises described in the complaint, and, subject to such life estate, her four " after-born " children were vested with the remainder. The youngest of such children was born on April 1, 1857. From that time, therefore, for a period of over thirty years, those parties had, under the will of William Caldwell and the laws of the State, been vested with an estate in remainder in the premises in question, when the defendant Hayden commenced proceedings in the year 1887 in their behalf. The estate was so vested in each of those four, subject to be divested by his or her death before the death of the life tenant. (*Campbell* v. *Stokes,* 142 N. Y. 23.) Had Eliza McGillis died at any time during that thirty years, no doubt could be entertained but what those four parties would have taken the estate under the provisions of the will of William Caldwell and the statute above quoted.

Subsequently, on July 1, 1888, the defendant Jarvis, son of Margaret Louisa Jarvis, was born, and on his birth became entitled to a contingent interest in one-fourth of the remainder in the premises in question, which would vest on his surviving the life tenant and his mother. He having survived his mother and Eliza McGillis, the question to be passed upon is, how, if at all, his contingent

interest in the lands in question has been reduced from a one-fourth to a one-seventh interest.

It was not thus reduced by the contract made between the four "after-born" with the four "first-born" children of Eliza McGillis, by which the former agreed to transfer to the latter a portion of the estate to be recovered. As the first-born children had no legal interest in the remainder, the promise that they should share in the recovery was probably without any consideration — a promise to make a gift; but if obligatory on the parties who entered into the agreement, it had no validity as against the defendant Jarvis. His mother had no authority to give away his property, or by her contract to affect his contingent right to one-fourth of the remainder in the real estate in question.

Nor do I think that his contingent right in the premises in question was affected by the provisions of chapter 42 of the Laws of 1889. The estate in remainder of the four "after-born" children having been vested for so long a period, could not be divested by the statute in question, nor could the contingent property right of the defendant Jarvis be affected thereby. Such right was a contingent estate. (1 R. S. 723, § 13; *Powers* v. *Bergen*, 6 N. Y. 358–360.) It was property, and being property he could not be deprived thereof by a subsequent law enacted by the Legislature. (*Westervelt* v. *Gregg*, 12 N. Y. 202; *Luhrs* v. *Eimer*, 80 id. 171.)

The Legislature may in certain exceptional cases provide for the disposition of future contingent interests in real estate for the benefit of parties who may become thereafter entitled thereto, but it cannot arbitrarily deprive them of their property therein. (See *Ebling* v. *Dreyer*, 149 N. Y. 460; *Kent* v. *Church of St. Michael*, 136 id. 10.)

The contingent right of the defendant Jarvis to one-fourth of the said remainder could no more be reduced by the Legislature in 1889 to a one-seventh interest than could the one-quarter vested interest of his mother, had she not entered into the agreement referred to with the children born before the death of the testator. The Legislature had no more power in the one case than in the other. (See *Powers* v. *Bergen*, 6 N. Y. 358; *Brevoort* v. *Grace*, 53 id. 245.)

In the case last cited it was held that the Legislature could, by special act, authorize the sale of a future contingent interest in the real estate of a person not in being, but that it could not authorize the sale of lands in which adults competent to act for themselves had an interest, *either vested or contingent*, and GROVER, J., in his opinion (p. 259), says : " It is further insisted that although the Legislature may not have the power to authorize the sale of an estate in possession, or a vested estate in expectancy of an adult, without his consent, yet it can authorize the sale of a contingent estate in expectancy. I can see no reason for the distinction. An owner *sui juris* is equally competent to determine and manage for himself in the one case as in the other. The foundation of the power of the Legislature to act in behalf of any owner is the want of capacity to act for himself, and this reason no more extends to the case of a contingent than to a vested expectant estate. *The question as to whether the interests are vested or contingent is not material and will not be discussed*," thus holding that future contingent interests in real estate are as much protected by the provisions of the Constitution as is a vested remainder.

As it was not within the power of the Legislature, by the act of 1889, to divest the four " after-born " children of Eliza McGillis of an estate with which they had been vested under the laws of the State for thirty years, or the contingent estate of the defendant Jarvis, which has since vested, I think the statute of 1889 should not be deemed to have been intended by the Legislature to have a retrospective operation, or by its terms to apply to an estate the title to which had vested at the time of its enactment.

It is a well-settled doctrine that " no statute shall be construed to have a retrospective operation, without express words to that effect, either by an enumeration of the cases in which the act is to have such retrospective operation, or by words which can have no meaning unless such a construction is adopted." (*Palmer* v. *Conly*, 4 Den. 376 ; *Dash* v. *Van Kleeck*, 7 Johns. 477 ; *The People* v. *Supervisors of Columbia Co.*, 43 N. Y. 131 ; *Sanford* v. *Bennett*, 24 id. 20 ; *N. Y. & Oswego M. R. R. Co.* v. *Van Horn*, 57 id. 473.)

I find nothing in the act of 1889 that shows a legislative intent to give that statute such a retrospective operation, so as to affect the

title of the parties to real estate with which they had been vested for so long a period before the law went into operation. It is true that the language used in the act is: "Nor shall the title to any such real estate * * * which *has been* or shall be devised or conveyed to such woman or to such foreign born children or descendants be impaired or affected by reason of her marriage with an alien," etc. The words "has been" in the act should, I think, be deemed to refer to devises in wills executed prior to its passage, and where the devise had not actually taken effect when the law went into operation. When the statute in question was enacted the children of Eliza McGillis born before the death of William Caldwell had no title to the premises in question. The devise had taken effect and the title was vested in the "after-born" children. The "first-born" children had no interest in the real estate in question to be affected or impaired. Hence, by the terms of the statute in question, as well as under the principle above adverted to, that a law shall not be construed to have a retrospective operation, it cannot be deemed to affect the rights of the "after-born" children, or the property right of the defendant Jarvis, who has succeeded to his mother's title, and who, when the act was passed, had a contingent estate in remainder in the premises in question.

It follows that, although the testator intended that all the children of Eliza McGillis should share equally in the remainder in question, under the laws of the State applicable, those born prior to his death could not take any interest therein, and those born after his death took the whole estate (*Downing* v. *Marshall*, 23 N. Y. 366; *Van Cortlandt* v. *Laidley*, 59 Hun, 161), and the defendant Jarvis is entitled to the one-fourth interest in said remainder to which his mother would have been entitled, had she survived the life tenant.

The remaining question in the case concerns the claim of the defendant Hayden to the "Mansion House Property." The agreement under which he claims was made with the four "after-born" children of Eliza McGillis before the birth of the defendant Jarvis. It was a contract that, for services to be performed, Hayden should be paid by a conveyance of a portion of the property sought to be recovered. The arrangement made seems to have been a fair and equitable one. The four "after-born" children made an agreement

with those born before the death of William Caldwell by which the intent of the testator, that the remainder after the death of the life tenant, Eliza McGillis, should go equally to her surviving issue, should be carried out. The death of Louisa Jarvis was not then anticipated. It does not appear that by the conveyance of the "Mansion House Property" to Mr. Hayden he received an excessive compensation for the services he contracted to perform. Those services to some extent inured to the benefit of the defendant Jarvis. I should, therefore, feel inclined, if possible, to sustain the conclusion of the referee in reference to the claim of Mr. Hayden, but I have with some reluctance reached the conclusion that it was beyond the power of the parties who made the contract with him to convey or affect the interest of the defendant Jarvis in the "Mansion House Property," or to give to Mr. Hayden any claim for legal services, as against Jarvis, which could be enforced against the interest of the latter in the property in question or otherwise. Suppose those parties, instead of conveying to Mr. Hayden the "Mansion House Property," had agreed to pay him $20,000 in money for the services he was to perform. It would hardly be claimed that he could have collected of Jarvis any part of such agreed compensation. It was said in the opinion in *Kent* v. *Church of St. Michael* (*supra*, p. 17) that "where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves but also for the persons unborn. This is a rule of convenience and almost of necessity."

In other words, the authority cited holds that those unborn or having a contingent interest in the premises affected by the litigation are bound by the proceedings *in court* and *by the judgment* in the action, not by contracts or engagements made by the parties in whom the title to the estate is vested, not considered or passed upon in the litigation or validated or sanctioned by the judgment of the court.

I am unable to reach the conclusion that the conveyance of the "Mansion House Property" made by the four "after-born

children to Hayden in any manner affected the interest of 'the
defendant Jarvis therein, or that the latter is in any way bound by
such contract.

The judgment should be reversed and judgment rendered in pur-
suance of this opinion, with costs to the appellant to be paid out of
the estate.

So much of the judgment as charged the infant Jarvis with a
lien in favor of Mr. Hayden reversed; in other respects affirmed,
with costs to both parties to be paid out of the fund.