McGILLIS et al. v. McGILLIS et al.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. REMAINDERS—ALIEN DEVISEE—STATUTE REMOVING DISABILITY.

A devise of a life estate to a woman, with remainder in fee to her issue surviving her, gives the remainder to such of her issue as are at her death able to take by the devise; and therefore Laws 1889, c. 42, enacted during the life of the woman, and removing the disability of such of her issue as were aliens, admits them to take the remainder equally with other issue who had from their birth capacity to take by the devise. Putnam, J., dissenting.

2. Same—Contract by Remainder-Man to Sell.
    A devise of a life estate, with remainder in fee to the issue of the life tenant
    surviving her, gives to such issue an estate defeasible by their failure to sur-
    vive the life tenant; and therefore a contract to convey, executed by one of
    the children of the life tenant, is void as against the issue of such child,
    where she died before the life tenant.

Action by Robert A. McGillis and another against Ewen McGillis
and others to partition certain real estate in Warren and Albany
counties, and to enforce an alleged lien in favor of defendant Henry
W. Hayden on the interest of defendant Morrison M. E. Jarvis in
certain other real estate. There was an interlocutory judgment for
plaintiffs on the report of a referee, and defendant Morrison M. E.
Jarvis moves for a new trial on exceptions ordered heard in the
first instance at general term. Judgment modified.

The facts are stated by Mr. Justice PUTNAM as follows:

This action was brought for the partition of certain real estate in the counties
of Albany and Warren, and for the enforcement of an alleged lien on other real
estate, known as the "Mansion-House Property," at Caldwell, N. Y., in favor
of the defendant Henry W. Hayden, on the interest of the defendant Morrison
M. E. Jarvis therein; the complaint asking that the property sought to be par-
titioned be divided equally between the six surviving children of Eliza McGillis,
deceased, and the defendant Morrison M. E. Jarvis, the only child of Margaret
Louisa Jarvis, a deceased daughter of Eliza McGillis, and that the defendant
Morrison M. E. Jarvis may be directed to convey his interest in said mansion-
house property to the defendant Henry W. Hayden. William Caldwell died in
the year 1848, devising property in Albany and Warren counties to his daugh-
ter Eliza McGillis for life, to her husband for life, and after their deaths to
her issue her surviving, in the following language: "From and after the de-
cease of both my said daughter and her said husband, I give, devise, and be-
queath the remainder or fee simple in said property to the lawful issue of my
said daughter then living, in such relative proportions as they would, by the
laws of the state of New York, then have inherited or taken the same from her
in case she and they were then native-born citizens of said state, and she had
died intestate, lawfully seised of said property in fee simple." Eliza McGillis
died in the year 1893, and subsequent to the death of her husband. She had
married, on or about May 17, 1836, one John McGillis, an alien, and after such
marriage resided with her husband in Canada, where all her children were
born. At the time of the death of the testator, she had four children, who were
aliens, viz. Mary Charlotte, William H., John, and Elizabeth. The latter died
without issue in 1890. After the death of William Caldwell, said Eliza Mc-
Gillis had four children,—Ewen, Margaret Louisa, who married John H. Jarvis,
and died, intestate, on May 1, 1891, leaving the defendant Morrison M. E. Jar-
vis her only heir; Robert A. McGillis, and Mary Sophia, who married, on March
8, 1887, Alexander A. R. McDonell. Thus, Eliza left as her issue six children,
three born before the death of the testator, and three after, and one grandchild,
the son of a daughter, also born subsequent to the decease of William Caldwell.
    In the year 1850 an action was brought by the executor named in the will of
William Caldwell, deceased, to obtain a judicial construction of its provisions.
Eliza McGillis, her husband, and her four children then living were made par-
ties defendants. It was held in that action that the devise to Eliza McGillis for
life was valid, she not being an alien, but the devise to her husband and to her
issue, they all being aliens at Caldwell's death, was void and inoperative, under
2 Rev. St. p. 57, § 4, which provides that "a devise to a person who at the time
of the death of the testator shall be an alien is void." See Beck v. McGillis, 9
Barb. 35. Soon after, an action was brought by the devisees of the other two-
thirds share in the Warren county property to partition it. Eliza McGillis was
made a party, but her children were not. In that action the property was di-
vided. A life estate in one-third thereof was set off to Eliza McGillis, and the
fee therein to the heirs at law of the testator. No order confirming the report
of the commissioners in partition was made or filed. This action was known

as the suit of "Van Cortlandt vs. Laidley." In the year 1887, four other children than those living at the death of the testator having been born to Eliza McGillis, proceedings were commenced by the defendant Henry W. Hayden to establish the title of such children to the fee in the Warren county property, which had been set off in the said action to Eliza McGillis for life, and to the heirs at law of the testator in fee. Mrs. McGillis was then living, and had eight children, the four named as defendants in the action of Beck v. McGillis, and the four others born since the death of William Caldwell. Mr. Hayden secured the passage of chapter 310 of the Laws of 1887, by which the state released any right of escheat which it might possess over the property in question on account of the alienage of the children of Eliza McGillis. The first-born four, on the 20th day of June, 1887, conveyed to the after-born four their interest, if any, in the property in question, on the agreement that the after-born four would share equally with them in case their title thereto should be established. The entire eight also executed a deed to Henry W. Hayden, their attorney, of a portion of the property known as the "Mansion-House Property," and said Hayden, in consideration thereof, contracted to conduct the proceedings for them. In July, 1888, the four children born after Caldwell's death were permitted to intervene in the aforesaid action of Van Cortlandt against Laidley, as the plaintiffs in a cross action against the heirs at law of William Caldwell, deceased. The rights of the children of Eliza McGillis to the remainder in the property set off in that suit to her for life, as against the heirs at law of William Caldwell, were the only issue in the cross action. It was there decided that the children of Eliza McGillis, born after Caldwell's death, not being aliens at that time, were not within the provisions of 2 Rev. St. p. 57, § 4, making devises to persons at that time aliens void; that, not being parties to the action of Beck v. McGillis, they were not bound by the judgment therein; that they and all subsequent born issue who should survive Eliza McGillis were entitled to the remainder. Van Cortlandt v. Laidley, 59 Hun, 161, 11 N. Y. Supp. 148. The defendant Morrison M. E. Jarvis was born on July 1, 1888. His mother, Margaret Louisa Jarvis, died on August 1, 1891. The act of the legislature providing that foreign-born children of a woman born in the United States may hold real estate was passed on the 2d day of March, 1889.

Two questions were presented on the trial: First, whether the defendant Morrison M. E. Jarvis was entitled to a one-seventh interest or to a one-fourth interest, as he claimed, in the real estate in question; second, whether, as against him, the agreement made by all the other parties in interest, and by his mother, by which, in consideration of services to be rendered by the defendant Henry W. Hayden, the mansion-house property, at Caldwell, was to be given to him, can be enforced. The learned referee found in favor of the contention of the plaintiffs on both questions, and the defendant Morrison M. E. Jarvis appeals.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

Henry W. Hayden, for plaintiffs.

Hun & Johnston, for defendants.

Henry T. Kellogg, guardian ad litem of Morrison M. E. Jarvis.

LANDON, J. In the action of Beck v. McGillis, 9 Barb. 35, the heirs of the testator obtained a decision which, as between them and the first-born four children of Mrs. McGillis, gave to the heirs the remainder upon the death of Mrs. McGillis. That is of no consequence here, since no party to this action claims under the heirs of the testator. The judgment in the case of Van Cortlandt v. Laidley, 59 Hun, 161, 11 N. Y. Supp. 148, excluded the heirs of the testator from any title to the remainder, because the title to the same was vested in the four after-born children of Mrs. McGillis. But this case decided nothing in respect to the share of the infant, Morrison Jarvis, because he was not a party to the action. Whether his share

is one-fourth or one-seventh is a question unprejudiced by the judgments in either of the actions mentioned. I think his share is one-seventh. The "remainder" to the "lawful issue of my daughter then living"—that is, at the daughter's death—was a contingent remainder. When the testator died, there were no persons in being who could take the remainder under the will. This was not any objection to its validity. 1 Rev. St. p. 725, § 28; Purdy v. Hayt, 92 N. Y. 446. The existing issue of Mrs. McGillis were then incompetent to take, because of their alienage. But the disability of their alienage might be removed. Other children not subject to such disability might be born to her. Thus, the persons to whom the remainder was limited were uncertain, and thus a contingent remainder, as defined by the statute, was created. 1 Rev. St. p. 723, § 13; Moore v. Littel, 41 N. Y. 66; Hennessy v. Patterson, 85 N. Y. 91, 104. This situation was contemplated by the testator; for, by apt words, he postponed until his daughter's death the determination of the persons who should take the remainder, though he defined the class of persons who should take it. This the section of the statute above cited permitted the testator to do. Upon the birth of a child to Mrs. McGillis, after the death of the testator, the remainder ceased to be contingent, and became vested in that child; that is, as our courts have been constrained to use the term "vested," under the thirteenth section of the statute. Although vested, it was liable to be divested by the child's death in the lifetime of the mother, and also the interest of such child while living was liable to open and be diminished by the birth of after-born issue, and also by letting in the prior-born children, the moment their disability, through alienage, should be removed. Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811. In like manner it may be said that upon the testator's death, since there was then no person in existence who could take the remainder under the will in case Mrs. McGillis had died before giving birth to another child, and before the disability of her first-born was removed, the remainder vested in the heirs of the testator as in case of intestacy; but, if so, it was liable to be divested, and was, in fact, divested, by the coming into existence of her after-born child, or by the acquisition in her lifetime of the capacity by the prior-born to take under the devise. The term "vested," as used in the thirteenth section of the statute, must be considered with reference to the subject-matter vested. We must distinguish, says Mr. Washburn, quoted in Hennessy v. Patterson, 85 N. Y. 103, "between the vesting of a right to a future estate of freehold, the vesting of a freehold estate in interest, and the vesting of the same in possession." Now, upon the birth of the first child of the after-born children of Mrs. McGillis, the thirteenth section authorizes us to say that the remainder was solely vested in that child, because, if Mrs. McGillis had then died, that child would have been the only person answering to the testator's designation of his ultimate devisee. But of what estate in the remainder was he vested? Of a present right to its future possession, —a right liable to be diminished or defeated by possible future events, inherent in the nature of his right; and entirely beyond his control. Thus, the term "vested" is not here the exact opposite of

"contingent," but is in a measure confused with it. It has the quality of opening and sharing, of ending and shifting, in such way that he who yesterday was the only person vested to-day has others sharing with him, and to-morrow may be wholly divested, and this, too, against his consent. There, probably, is some lack of accuracy in using the term in this sense; some confusion of the common-law distinction between vested and contingent estates. Judge Grover pointed it out in his dissenting opinion in Moore v. Littel, supra, and it has not escaped other criticism (6 Alb. Law J. 361; Gray, Perp. § 107); but the shifting sense has the support of authority.

The argument against the power of the legislature to qualify the four first-born children of Mrs. McGillis to take under the devise of the testator rests upon the assumption that title to the ultimate possession of the remainder absolutely vested either in the heirs of the testator or in the after-born children of Mrs. McGillis. It wholly fails when we see that such vesting was not of the absolute right to the ultimate possession of the remainder, but of a contingent right to it; the contingencies inhering in the right as created by the testator, and only absolutely to be put at rest by the death of Mrs. McGillis. Then those who were within the class designated by the testator became vested of the remainder in possession, and until then all the issue of Mrs. McGillis were eligible to enter the class,—the after-born by birth within it, the prior-born by the enabling qualification of the statute. Thus, the statute affected the right of the first-born to come within the class to be benefited by the devise, and this was plainly within the intention of the testator; and thus the statute aided his purpose, instead of defeating it. His heirs never acquired any title, because he was not intestate, and thus the statute did not affect them. The after-born held their title during Mrs. McGillis' life, subject to such laws as to the admission of the first-born as might be enacted. Such is the meaning of the will, and such was the nature of their interests. In re Baer, 147 N. Y. 348, 41 N. E. 702. When Mrs. McGillis died, her lawful issue, capable of taking both under our statutes and under the terms of the will, consisted of all her lawful issue then living,—her six children, and the infant, Jarvis, her grandchild: and each took one-seventh of the remainder in fee. I agree with Mr. Justice PUTNAM that the share of the infant, Jarvis, is not bound by the contract made with Mr. Hayden.

I advise that so much of the interlocutory judgment as charges the share of the infant, Jarvis, with a lien in favor of Mr. Hayden, be reversed; in other respects, that the judgment be affirmed; costs of both parties to be paid out of the fund.

PARKER, P. J., and MERWIN, J., concur.

PUTNAM, J. (dissenting). In the year 1887, when the defendant Henry W. Hayden commenced proceedings in behalf of the four children of Eliza McGillis born subsequent to the death of William Caldwell (hereafter designated as the "after-born children"), those parties were vested with title to the remainder in the real estate in Warren county set off to their mother for life. The devise in the will of Wil-

liam Caldwell, so far as it gave an interest in such remainder to the children of said Eliza born before his death (they being at the time of his decease aliens), was void. This had been adjudicated in an action in which the said children and the heirs of the testator were parties. Beck v. McGillis, 9 Barb. 35. But the devise of such remainder was valid as to the after-born children. Wadsworth v. Wadsworth, 12 N. Y. 376. They were entitled to the entire remainder so bequeathed (Downing v. Marshall, 23 N. Y. 366), except as against the state, whose right therein was released by chapter 310, Laws 1887.

The above conclusions are authorized by the decision of the general term of the Third department in Van Cortlandt v. Laidley, 59 Hun, 161, 11 N. Y. Supp. 148. The trial court in that case found, in reference to the children of Eliza McGillis born before the death of William Caldwell, as follows:

"As the above-named children of Eliza McGillis were, upon the death of William Caldwell, aliens, the said devise to such issue by the will of William Caldwell was void, under the provisions of section 4, art. 1, tit. 1, c. 6, 2 Rev. St. The judgment of this court in the action of Beck v. McGillis, referred to in the findings of fact herein, was binding and conclusive upon all the parties to the said action."

The judgment, which was afterwards affirmed by the general term and the court of appeals, provided:

"That the said fee or remainder in said property, partitoned and set apart therein to said Eliza McGillis, is vested in and owned by the lawful issue of the said Eliza McGillis born subsequent to the death of William Caldwell, and their assigns, in the proportions provided and specified by the said William Caldwell, deceased, in his said will and codicil."

We find, therefore, that at the time in question, under the decision in Van Cortlandt v. Laidley, supra, and under the provisions of 1 Rev. St. p. 723, § 13 (which enacts that a future estate is vested "when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate"), that Eliza McGillis had a life estate in the premises described in the complaint, and, subject to such life estate, her four after-born children were vested with the remainder. The youngest of such children was born on April 1, 1857. From that time, therefore, for a period of over 30 years, those parties had, under the will of William Caldwell and the laws of the state, been vested with an estate in remainder in the premises in question, when the defendant Hayden commenced proceedings in the year 1887 in their behalf. The estate was so vested in each of those four, subject to be divested by his or her death before the death of the life tenant. Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811.

Had Eliza McGillis died at any time during that 30 years, no doubt could be entertained but what those four parties would have taken the estate, under the provisions of the will of William Caldwell and the statute above quoted. Subsequently, on July 1, 1888, the defendant Jarvis, son of Margaret Louisa Jarvis, was born, and on his birth became entitled to a contingent interest in one-fourth of the remainder in the premises in question, which would vest on his surviving the life tenant and his mother. He having survived his mother and Eliza McGillis, the question to be passed upon is how, if

at all, his contingent interest in the lands in question has been reduced from a one-fourth to a one-seventh interest. It was not thus reduced by the contract made between the four after-born with the four first-born children of Eliza McGillis, by which the former agreed to transfer to the latter a portion of the estate to be recovered. As the first-born children had no legal interest in the remainder, the promise that they should share in the recovery was without any consideration, and, in fact, to make a gift. The agreement may have been obligatory on the parties, but it had no validity as against the defendant Jarvis. His mother had no authority to give away his property, or, by her contract, to affect his contingent right to one-fourth of the remainder in the real estate in question.

Nor do we think that his contingent right in the premises in question was affected by the provisions of chapter 42 of the Laws of 1889. The estate in remainder of the four after-born children, which had been vested for so long a period, could not be divested by the statute in question, nor could the contingent property right of the defendant Jarvis be affected thereby. Such right was a contingent estate. 1 Rev. St. p. 723, § 13; Powers v. Bergen, 6 N. Y. 358–360. It was property, and, being property, he could not be deprived thereof by a subsequent law enacted by the legislature. Westervelt v. Gregg, 12 N. Y. 202; Luhrs v. Eimer, 80 N. Y. 171. The legislature may in certain exceptional cases provide for the disposition of future contingent interests in real estate for the benefit of parties who may become thereafter entitled thereto, but it cannot arbitrarily deprive them of their property therein. See Ebling v. Dreyer, 149 N. Y. 460, 44 N. E. 155; Kent v. Church of St. Michael, 136 N. Y. 10, 32 N. E. 704. The contingent right of the defendant Jarvis to one-fourth of the said remainder could no more be reduced by the legislature in 1889 to a one-seventh interest than could the one-quarter vested interest of his mother, had she not entered into the agreement referred to with the children born before the death of the testator. The legislature had no more power in the one case than in the other. See Powers v. Bergen, 6 N. Y. 358; Brevoort v. Grace, 53 N. Y. 245. In the case last cited, it was held that the legislature could, by special act, authorize the sale of a future contingent interest in real estate of a person not in being, but held that it could not authorize the sale of lands in which adults competent to act for themselves had an interest, either vested or contingent; and Grover, J., in his opinion (page 259), says:

"It is further insisted that although the legislature may not have the power to authorize the sale of an estate in possession, or a vested estate in expectancy of an adult without his consent, yet it can authorize the sale of a contingent estate in expectancy. I can see no reason for the distinction. An owner sui juris is equally competent to determine and manage for himself in the one case as in the other. The foundation of the power of the legislature to act in behalf of any owner is the want of capacity to act for himself, and this reason no more extends to the case of a contingent than to a vested expectant estate. The question as to whether the interests are vested or contingent is not material, and will not be discussed [thus holding that future contingent interests in real estate are as much protected by the provisions of the constitution as a vested remainder]."

As it was not within the power of the legislature, by the act of 1889, to divest the four after-born children of Eliza McGillis of

an estate with which they had been vested under the laws of the
state for 30 years, or the contingent estate of the defendant Jarvis,
which has since vested, we think the statute of 1889 should not
be deemed to have been intended by the legislature to have a re-
trospective operation, or, by its terms, to apply to an estate the
title to which had vested at the time of its enactment. It is a well-
settled doctrine that "no statute shall be construed to have a re-
trospective operation, without express words to that effect, either
by an enumeration of the cases in which the act is to have such
retrospective operation, or by words which can have no meaning
unless such a construction is adopted." Palmer v. Conly, 4 Denio,
376; Dash v. Van Kleeck, 7 Johns. 477; People v. Board of Sup'rs
of Columbia Co., 43 N. Y. 131; Sanford v. Bennett, 24 N. Y. 20;
Railroad Co. v. Van Horn, 57 N. Y. 473. We find nothing in the
act of 1889 that shows a legislative intent to give that statute such
a retrospective operation, so as to affect the title of the parties to
real estate with which they had been vested for so long a period
before the law went into operation. It is true that the language
used in the act is: "Nor shall the title to any such real estate
*   *   * which has been or shall be devised or conveyed to such
woman or to such foreign-born children or descendants be impaired
or affected by reason of her marriage with an alien," etc. The words
"has been," in the act, should, we think, be deemed to refer to devises
in wills executed prior to its passage, and where the devise had
not actually taken effect when the law went into operation. When
the statute in question was enacted, the children of Eliza McGillis
born before the death of William Caldwell had no title to the prem-
ises in question. The devise had taken effect, and the title was
vested in the after-born children. The first-born children had no in-
terest in the real estate in question to be affected or impaired.
Hence, by the terms of the statute in question, as well as under
the principle above adverted to,—that a law shall not be construed
to have a retrospective operation,—it cannot be deemed to affect
the rights of the after-born children, or the property right of the
defendant Jarvis, who has succeeded to his mother's title, and who,
when the act was passed, had a contingent estate in remainder in
the premises in question.

It follows that although the testator intended that all the chil-
dren of Eliza McGillis should share equally in the remainder in
question, under the laws of the state applicable, those born prior
to his death could not take any interest therein, and those born
after his death took the whole estate (Downing v. Marshall, 23 N.
Y. 366; Van Cortlandt v. Laidley, 59 Hun, 161, 11 N. Y. Supp. 148);
and the defendant Jarvis is entitled to the one-fourth interest in
said remainder to which his mother would have been entitled had
she survived the life tenant.

The remaining question in the case as to the claim of the defend-
ant Hayden to the mansion-house property. The agreement under
which he claims was made with the four after-born children of Eliza
McGillis before the birth of the defendant Jarvis. It was a con-
tract that, for services to be performed, Hayden should be paid by

a conveyance of a portion of the property sought to be recovered. The arrangement made seems to have been a ·fair and equitable one. The four after-born children made an agreement with those born before the death of William Caldwell, by which the intent of the testator that the remainder after the death of the life tenant, Eliza McGillis, should go equally to her surviving issue, should be carried out. The death of Louisa Jarvis was not then anticipated. It does not appear that, by the conveyance of the mansion-house property to Mr. Hayden, he received an excessive compensation for the services he contracted to perform. Those services, to some extent, inured to the benefit of the defendant Jarvis. We should therefore feel inclined, if possible, to sustain the conclusion of the referee in reference to the claim of Mr. Hayden; but we have with some reluctance reached the conclusion that it was beyond the power of the parties who made the contract with him to convey or affect the interest of the defendant Jarvis in the mansion-house property, or to give to Mr. Hayden any claim for legal services as against Jarvis, which could be enforced against the interest of the latter in the property in question, or otherwise. Suppose those parties, instead of conveying to Mr. Hayden the mansion-house property, had agreed to pay him $20,000 in money for the services he was to perform. It would hardly be claimed that he could have collected of Jarvis any part of such agreed compensation.

It was said in the opinion in Kent v. Church of St. Michael, 136 N. Y. 17, 32 N. E. 705, that:

"Where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn. This is a rule of convenience, and almost of necessity."

In other words, the authority cited holds that those unborn or having a contingent interest in the premises affected by the litigation are bound by the proceedings in court, and by the judgment in the action, not by contracts or engagements made by the parties in whom the title to the estate is vested, not considered or passed upon in the litigation, or validated or sanctioned by the judgment of the court. We are unable to reach the conclusion that the conveyance of the mansion-house property made by the four after-born children to Hayden in any manner affected the interest of the defendant Jarvis therein, or that the latter is in any way bound by such contract.

The judgment should be reversed, and judgment rendered in pursuance of this opinion, with costs to the appellant to be paid out of the estate.